## KEMPNER *v.* PULASKI COUNTY.

### Opinion delivered May 29, 1897.

CORONER—POWER TO EMPLOY PHYSICIAN.—A coroner has the discretion to select a physician to make an autopsy, in order to ascertain the cause of a death, and the county court cannot interfere with the exercise of this discretion by employing a physician to make all necessary autopsies.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

*Joseph Loeb,* for appellant.

When a person dies under suspicious circumstances, or the coroner has reason to believe a crime has been committed, it is his duty to employ a competent physician to perform an autopsy. 55 Ark. 419; 52 *id.* 361; 60 *id.* 508. The county court has

no right to control the choice of the coroner in selecting the physician (88 Ind. 102), although the county court has made a general appointment of a physician for that purpose, and made a contract with him for such services. 34 Pa. St. 301; 3 *id.* 462; 4 *id.* 269; 64 Ind. 524; 86 *id.* 154. The fee was reasonable.

*John M. Rose,* for appellee.

The coroner can only employ a physician in an emergency. 35 Ark. 419. There was no emergency here. The county court is the financial and managing agent of the county. Sand. & H. Dig., § 1173. It may inquire into and disallow the coroner's bills. 25 Ark. 361. The county had a physician, and arranged with him to perform all necessary autopsies. The court, sitting as a jury, found that there was no necessity for the employment of a physician. This finding should not be disturbed, if there is any evidence to sustain it. 53 Ark. 61.

BUNN, C. J. This suit was begun by the presentation to the Pulaski county court for allowance of a claim for a fee of $50 by the appellant, for performing an autopsy, at the instance of the coroner, upon the body of one Kate Dullahan, who had given birth to a child, and, with the child, had died immediately, under circumstances indicating that the deaths were the result of an abortion. The claim was disallowed by the county court (upon what grounds we are not informed, except by way of inference), and the matter was duly appealed to the circuit court, where the disallowance of the county court was affirmed, and the case was duly appealed to this court.

The sole matter in controversy cannot be better set forth than to quote the findings and judgment of the circuit court, and the same are as follows, to-wit: Findings: "That Dr. Illing was county physician, appointed by the county court, with the understanding and agreement on his part that he would do all the practice for which the county is liable, and make all autopsies deemed necessary by the coroner to enable him properly to discharge the duties as such; and, in case he could not attend in person to make such autopsies as are required to be made in the city of Little Rock, he agreed to send some competent physician to make them for him; and

when autopsies were to be made in the country, and he could not be present in person, and did not send a physician, he would have the coroner to call a physician to do the work at from ten to fifteen dollars for each case, and he would recommend the allowance of the fees, and the county court would then pass upon the claims. And the county court agreed to pay Illing $100 per month for his services. The court further finds that Dr. Hudspeth, at the request of the county physician, made for him the autopsies charged for in this case by Kempner, and that Kempner made them at the request of the coroner, and that they performed the work at the same time, and [that] both testified as to the cause of death, and both agreed as to the cause, and that both were competent physicians; that the coroner did not notify the county physician or the county judge that he did not wish Dr. Hudspeth to make the autopsies (though they were both in the city at the time, and could have been reached by telephone), the coroner believing that he, and not the county court, had the right to say who should perform such work, and he preferred Dr. Kempner to any one else; that the coroner knew of the contract between Dr. Illing and the county; and that there was no necessity for the employment of Dr. Kempner by the coroner, the services of a competent physician having been secured by the county."

And, upon these findings, the circuit court made the following declarations of law, to-wit: " That the county is liable for a reasonable compensation to a competent 'physician who makes an autopsy in a case where such service is necessary to enable the coroner properly to discharge his duty as such; and the county, being liable for such services, has the right to contract with some competent physician to perform such services; and when it does so, and notifies the coroner of the fact, that officer cannot bind the county for such services rendered by another physician at his request, except in cases of emergency, when the physician employed by the county for such services fails to perform his contract."

Upon this finding of facts and this declaration of law, the circuit court found for the county. All exceptions were made and reserved.

In addition to the facts found by the court, it was shown in evidence that, on being informed of the death of the woman and child, and the suspicious circumstances surrounding the occurences, and the charges more or less current in relation thereto, the coroner, Dr. J. R. Walter, notified Dr. Illing, the county physician, suggesting that he should bring Dr. Kempner with him to perform the autopsy; and this request was made because of the peculiar skill of Kempner in such matters, in the estimation of the coroner, in which estimation he seems to have been sustained by the evidence, as well as by the findings of the court. The county physician, however, sent Dr. Hudspeth to perform the autopsy. In the meantime the coroner had summoned his jury to view the bodies. When Dr. Hudspeth arrived, and it was ascertained that he was to perform the autopsy, objections were raised by members of the jury, because they had learned that Dr. Hudspeth and the suspected party occupied the same office, and were partners in the profession; and the coroner, in his testimony, says his suspicions were also aroused, and he requested Dr. Kempner to perform the operation, which the coroner says he did.

Thus it is that the question is fairly presented as to whether or not the county court can compel a coroner to accept the services of a physician it has appointed and engaged to perform the same; and that is really the only question in the case as it is presented to us, the necessity for the autopsies being conceded, and the amount of the fee not having been passed upon, as the claim *in toto* was disallowed.

In *Clark County* v. *Calloway*, 52 Ark. 361, this court said: "It is not necessary that an inquest should be held in the case of one dying with fever, apoplexy or other disease. It was not required by the common law, and is not demanded by the statute." The effect of that ruling is manifestly that, in passing upon claims for fees for performing autopsies, the county court has a discretion to inquire into the necessity and propriety of the inquest; and it follows that it has the authority to exercise that discretion in a disallowance of the claims in proper cases. In the very nature of things, the county court has a discretion also to determine whether a claim is reasonable or unreasonable as to amount. This discretion marks the boun-

dary of the county court's authority in respect to the allowance and payments of expenses incurred by the coroner in the discharge of his lawful duties.

The duties of the coroner are thus defined in *St. Francis County* v. *Cummings*, 55 Ark. 419, in which, after reciting several sections of the statutes on the subject, this court said: "These statutes make it his [the coroner's] duty to use all proper means to ascertain the truth concerning the death of the person over whose body he is required to hold an inquest. It sometimes occurs that the cause of death can only be ascertained by skillful physicians, and by them only by making an autopsy. How can the coroner discharge the duty imposed on him in such cases? The conclusion is unavoidable. He must in such case employ a physician to make an autopsy, and ascertain the cause of death."

It is not only his duty, in a proper case, to employ a physician to make the autopsy, in order to ascertain the cause of death, but that duty itself necessarily includes the other essential duty, to exercise his best judgment in the selection of the best talent and most unobjectionable person available for the peculiar services, involving not only intellectual accomplishments and skill, but situations and conditions of disinterestedness. All these elements of character in the employee are proper subjects of consideration by the coroner in making his appointments. Nor does it make any difference if, as to any one's qualifications, he is mistaken in his estimate. He should act upon his candid judgment, and even in view of his doubts. He cannot delegate this delicate duty to another, for the law has imposed it personally upon him, and he cannot shirk its responsibility. Still less can another rob him of his functions, or relieve him of the responsibility. What law is there that makes the county court responsible for the character of a physician it may seek to assign to this important duty? The county court owes a duty, connected with it, to the people of the county and the public generally, but that is purely a financial duty.

But the authorities, as well as reason, are against the interference of the county court with the functions of the coroner. See *Board of Commissioners* v. *Bond*, 88 Ind. 102;

*Allegheny County* v. *Shaw*, 34 Pa. St. 301; *Allegheny County* v. *Watt*, 3 Pa. St. 462; *Commissioners* v. *Harman*, 6 Pa. St. 269; *Jameson* v. *County*, 64 Ind. 524; *Board of Commissioners* v. *Jameson*, 86 Ind. 154.

While the county court cannot interfere with the coroner in the performance of any of the duties pertaining to his office, the latter is responsible for the manner in which he performs these duties, and where he has a discretion, as in this instance, he is responsible for an abuse of that discretion. Thus he may incur expenses which are totally unnecessary, or are greater than ought to be allowed; and as these have to be paid, if paid at all, by the county, it follows that the county court has a discretion to allow these expenses in whole or in part, but its discretion also will be controlled by the appellate courts, to the extent of preventing an abuse of it in its disallowances, as in cases of its allowances.

The judgment of the circuit court is reversed and remanded.