24301, 24302, 24303. CURD *v.* TRAVELERS INSURANCE COMPANY.

DECIDED MAY 24, 1935.

*Jones & Neighbors, F. M. Gleason,* for plaintiff.

*Finlay & Campbell, Maddox, Matthews & Owens,* for defendant.

BROYLES, C. J. Mose Curd brought three suits against Travelers Insurance Company, alleging, in brief, that he was an employee of the Peerless Woolen Mills; that the defendant company issued to the Peerless Woolen Mills a group-insurance contract in which the Peerless Woolen Mills was named as the assured; that the Peerless Woolen Mills paid for the insurance and gave it to its employees; that the master policy was designated as G-728; that the insurance provided for a death benefit and a disability benefit; that under this group contract of insurance plaintiff had three certificates issued to him, they being certificates No. 662, dated September 26, 1924, No. 926, dated February 25, 1927, and No. 1480, dated March 2, 1931; that each certificate was for $500 and increased $100 per year; "that on or about December 22, 1932, petitioner became afflicted with a duodenal ulcer," and since said date has been unable "to engage in any occupation for remuneration or profit;" and that on October 11, 1933, plaintiff filed his claim for disability. The three suits were based on the three certificates, and the aggregate amount of principal sued for was $3100, together with interest at 7% and a penalty of 25% of principal and interest for bad faith on the part of the defendant company.

The defendant answered, in brief, that the certificates "were effective only during the period of [plaintiff's] employment by said Peerless Woolen Mills," and that each of them "was canceled by the assured, Peerless Woolen Mills, . . by reason of the fact that the plaintiff had left its employment on or just before" the dates of cancellation, certificate No. 662 being canceled on May 22, 1926, No. 926 on July 13, 1930, and No. 1480 on May 2, 1932; that at no time while the plaintiff was insured under any of the certificates did he become wholly disabled; and "that he did not file with this defendant any proofs of disability within the time contemplated and provided for in said certificate[s] sued upon." The cases were tried together, and at the conclusion of the evidence the court directed a verdict for the defendant in each case and rendered judgments thereon; and the plaintiff filed motions for a new trial on the ground that there were issues of fact raised by the evidence which should have been submitted to a jury, and on the further ground that the court erred in admitting in evi-

dence, over objection of movant, two riders attached to and forming part of group life contract G-728. The court overruled the motions, and the plaintiff assigns error thereon.

The evidence shows that the Peerless Woolen Mills was the assured, was the party who contracted with the defendant company, and the party who paid for the insurance; that under the contract, only employees of the Peerless Woolen Mills could become beneficiaries of the insurance; that the assured notified the insurance company of what employees were covered by the insurance, when they became eligible to receive insurance by virtue of employment, and when their services terminated. This was the only method provided for the insurance company to get its record of whom the assured wished to insure, whom the assured had employed, when their employment began and when it terminated; and on that record the insurance certificates were issued and canceled. The employee, in accepting the insurance, had full knowledge of this, because his certificate provided that "this contract shall remain in force *until the assured shall notify the company to terminate the insurance* as to such employee." (Italics ours.)

There is some conflict in the evidence as to the period of the plaintiff's service for the Peerless Woolen Mills; but the evidence is undisputed that the assured (the mill) *notified* the insurance company that the plaintiff finally left the company on May 2, 1932, and the assured did not remit to the company any premium for his insurance after that date. The insurance company was bound to act in accordance with the notice furnished by the assured, the other party to the contract and the one paying the premiums. Harold M. Adams testified that he was employed by the Travelers Insurance Company; that "all records of the Travelers Insurance Company pertaining to coverage extended, cancellation of insurance, and insurance in force under group contracts or policies are in my control and in my custody;" that a group contract was issued to the Peerless Woolen Mills; that the insurance company required the employer to furnish a card called "registration card" for each employee eligible for insurance under the contract in order that the insurance company might have a record of the employees covered; that "the insurance in force as to any employee insured under a group contract such as G-728, terminates automatically in accordance with the contract provisions. In order that the files of

the insurance company may represent at all times a complete record of the employees covered, we require that the employer report to the Travelers Insurance Company at regular intervals the names of those employees whose insurance has terminated. . . The insurance of any employee covered thereunder shall end when his employment with the assured shall end, except in a case where at the time of such termination the employee was wholly disabled;" that when an employee leaves the employment of the assured, the employer enters a notation on his card showing the reason for the termination of his insurance; that the symbol "L. C." means "Left Company;" that the files of the company showed that insurance certificate No. 662 was assigned to plaintiff as of September 26, 1924, and that plaintiff was covered continuously until May 22, 1926, and that the reason for the termination of the insurance was the termination of his employment, as shown by the symbol "L. C." posted on the card in red ink; that the plaintiff had a second card showing that he was re-employed August 2, 1926, and certificate No. 926 was issued on February 25, 1927; that "the reason for issuing a new certificate was because insurance as evidenced by certificate No. 662 had terminated and, therefore, certificate No. 662 was null and void. Under certificate No. 926 Mose Curd was treated in every respect as though he had never been previously insured as the terms of Group Contract G-728 so provide;" that the coverage under No. 926 terminated July 13, 1930, "because the employee had terminated employment;" that the registration card showed that a third certificate, No. 1480, was issued to plaintiff on March 2, 1931, and was in force until May 2, 1932, when it terminated "because Mose Curd's employment terminated as of that date." The registration card showing the record of each of these certificates was introduced in evidence, and at the bottom of the card was the following: "Group insurance record card. Notice of termination of insurance is given by sending this card with reason and date of termination of insurance filled in, to the Travelers Insurance Co., Group Dept., Hartford, Conn." In addition, the defendant company introduced the following letter, in reference to the last certificate in force, from Peerless Woolen Mills to H. E. Critchfield, Secretary, Travelers Insurance Company, Hartford, Connecticut, dated June 3, 1932, with reference to Group Policy G-728, as follows: "We are enclosing herewith record cards for

the following: Name Mose Curd. Certificate No. 1480. (Other names are listed.) Kindly cancel these policies, as these parties are no longer in our employ. Several of the dates of cancellation are rather far back, but this is due to holding open the policies in case of long sickness, etc. Signed Peerless Woolen Mills, H. M. McCulloch, Treasurer." Other records were introduced corroborating the foregoing evidence as to the termination of the insurance under each of the certificates; and the following evidence also shows the "Time record of dates of service of Mose Curd in the Peerless Woolen Mills. Covering period of time from January 2, 1926, to December 24, 1932. Mose Curd was working at the Peerless Woolen Mills on January 2, 1926. He worked until May 22, 1926. He went back to work at the Peerless Woolen Mills on August 2, 1926. He worked until December 15, 1928. He went back to work at the Peerless Woolen Mills on April 26, 1929. He worked until July 13, 1930. He went back to work at the Peerless Woolen Mills on September 2, 1930. He worked until July 7, 1931. He went back to work at the Peerless Woolen Mills on August 4, 1931. He worked until May 2, 1932. He went back to work at the Peerless Woolen Mills on November 22, 1932. He worked until December 24, 1932."

According to the record, the last certificate that the plaintiff claims to hold, No. 1480, terminated on May 2, 1932. Moreover, if plaintiff did not go back to work until November 22, 1932, as shown by his time record, he could not have had insurance at the time he says he stopped work in December, because, under the contract of insurance, his time of service would have rendered him ineligible for insurance. Furthermore, plaintiff sued for an aggregate amount of $3100, and the master policy, which is a part of the contract, provides that $2000 is the maximum amount of insurance that any employee can have, no matter how long in the service of the employer.

It is true that the master policy and the certificate are interlocked, and the beneficiary named in the certificate can bring suit on the contract if the certificate is in force under the terms of the contract. However, the group insurance in this case is not a contract between the insurer and the employee. It is a contract between the insurer and the employer. The employer is making a gift to its employees and paying the premiums for them, and the

employer has the right and the duty to say who are its employees and to whom they are giving the insurance. The insurer can insure only employees of the assured, and can ascertain the names of the employees from the assured only. Since the employer notified the insurer that the plaintiff was no longer an employee of the company, and thereafter remitted no premium for him, the company was bound to terminate the insurance. See Davis v. Metropolitan Ins. Co., 161 Tenn. 655 (32 S. W. (2d) 1034); Baker v. Travelers Ins. Co., 202 N. C. 432 (163 S. E. 110); Austin v. Metropolitan Ins. Co. (La. App.), 142 So. 337; Magee v. Equitable Life Assurance Society, 62 N. D. 614 (244 N. W. 518, 85 A. L. R. 1457).

In *Travelers Insurance Co.* v. *Conine,* 37 *Ga. App.* 500 (140 S. E. 784), wherein it was held that the petition of the beneficiary under a group contract of insurance set out a cause of action, it was recognized that the contract was between the employer and the insurance company; that it was not in the power of the beneficiary "to keep the group contract in force or to abrogate it;" that "the notice which under the contract would destroy plaintiff's rights as beneficiary had to come from" the employer; and "that if such notice had been given, the defendant . . could plead it in defense to the action." The principle is just as applicable to the notice of the termination of a certificate of one employee as to the termination of the group contract including all the employees, where both are paid for by the employer who is a party to the contract. The policy in the instant case provides that the contract shall remain in force "until the assured shall notify the company to terminate the insurance as to such employee." In Magee v. Equitable Life Assurance Soc., supra, it was held that "Where such 'terms and conditions' require that the names of those insured in the group life insurance policy be certified to the Assurance Society by the employer, and premiums for such employee paid monthly, the failure to include such employee in the list insured and to pay premiums upon insurance for him precludes recovery against the Assurance Society upon the aforesaid certificate. See also Baker v. Travelers Ins. Co., supra.

Whether the employer gave the defendant company correct or incorrect information as to the termination of plaintiff's employment, the employer was the one from whom the notice as to termi-

nation of employment must come, and the insurance company acted in accordance with the notice it received, and there is no evidence that it violated its contract. Certainly the insurance company was under no obligation to insure plaintiff free of charge after the employer stopped payment of premiums for him. The employer having notified the defendant that the employment of the plaintiff had terminated and having ceased to pay premiums for his insurance, plaintiff's certificate was rendered void. Moreover, the master policy provides that "the insurance of any employee covered hereunder shall end when his employment with the assured shall end except in a case where at the time of such termination the employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from the date upon which the employee ceased to work and thereafter during the continuance of such disability and while this contract shall remain in force *until the assured shall notify the company to terminate the insurance as to such employee.*" (Italics ours.) The undisputed evidence shows that no premiums for the plaintiff's insurance were ever paid after May 2, 1932, and on that date the last certificate was canceled. Plaintiff alleges that he became permanently and totally disabled "on or about December 22, 1932." Conceding that he became so disabled on or about December 22, 1932, as alleged, the undisputed evidence shows that all three of his certificates were canceled long prior thereto, and that at the date when he became totally and permanently disabled he was not insured under any of the certificates. He filed his claim on October 11, 1933, which was over nine months after his alleged disability occurred, and more than seventeen months after his certificates were canceled. Regardless of other issues raised, the plaintiff could not legally recover in any of these cases under the evidence adduced, and in each case the court did not err in directing a verdict for the defendant or thereafter in overruling the motion for a new trial.

*Judgments affirmed. MacIntyre and Guerry, JJ., concur.*