25513. LANCASTER *v.* TRAVELERS INSURANCE
COMPANY.

DECIDED DECEMBER 3, 1936.

John D. & E. S. Taylor, Wright & Covington, for plaintiff.

Maddox, Matthews & Owens, Finley & Campbell, for defendant.

MACINTYRE, J.  Lancaster, an employee of the Trion Company, filed suit against Travelers Insurance Company on a certificate issued to him under a group-insurance policy issued to the Trion Company.  He alleged that he became permanently and totally disabled on June 9, 1933.  Claim was filed, and payment was refused.  The defendant answered that the policy so issued had been canceled by mutual agreement, on April 11, 1933, and that there was no liability on its part.  The evidence showed that on April 11, 1928, the company issued a group-insurance policy to the Trion Company, to be effective for a term of one year from that date. "and same may be renewed from year to year as hereinafter provided."  On December 14, 1932, the plaintiff was issued a certificate under the group policy, he being at the time an employee of the Trion Company.  On April 11, 1933, the insurance company and the Trion Company canceled this policy, and issued a new and different policy.  The defendant sent its agent to take up certificates issued under the canceled policy, and, where wanted, certificates under the new policy of group insurance were delivered.  The plaintiff knew of this, and was instructed by the Trion Company to notify employees to surrender their certificates under the policy which was canceled.  The plaintiff performed this duty, but refused to surrender his certificate under the old policy.  He continued to pay to the Trion Company the amount which he had been paying under the old policy, which was accepted by the Trion Company, but was never sent or delivered to the insurance company.  The plaintiff testified that the defendant's agent who was taking up the certificates under the old policy and

delivering the new certificates told him he was not eligible under the new policy, and "that he would take me around to Mr. Simmons [the representative of the Trion Company] and would authorize Mr. Simmons to take out my premiums and take the old policy right on, and when he began to do that the policy would be payable. . . I went with him to Mr. Simmons, and he gave Mr. Simmons those instructions." The agent and Simmons both denied this. Simmons, however, continued to accept from the plaintiff the monthly premiums he had been accustomed to pay. The master·policy provided that "no agent can make, alter, or discharge this policy or extend the time of payment of premiums, nor can this policy be varied or its conditions waived or extended, in any respect, except by the written agreement by the company, in compliance with the law of the State in which the policy is issued, signed by the president, one of the vice-presidents or secretaries, whose authority will not be delegated." At the conclusion of the evidence the court directed a verdict for the defendant and the plaintiff excepted.

The contracting parties in group insurance are primarily the employer and the insurance company. "It is a contract between the insurer and the employer. . . It was not in the power of the beneficiary 'to keep the group contract in force or to abrogate it.'" *Curd* v. *Travelers Insurance Co.*, 51 *Ga. App.* 306, 310 (180 S. E. 249). The obligations or covenants of the insured are not contained in the certificate. *Metropolitan Life Insurance Co.* v. *Harrod*, 46 *Ga. App.* 127, 128 (166 S. E. 870). The group or master policy, manifestly and by its express terms, is an agreement between the insurance company and the employer. *Johnson* v. *Metropolitan Life Insurance Co.*, 52 *Ga. App.* 759, 763 (184 S. E. 392) ; Austin v. Metropolitan Life Insurance Co., (La. App., 142 So. 337). The certificate to the employee is an evidence of his coverage by the master policy. All-States Life Insurance Co. v. Tillman, 226 Ala. 245 (146 So. 393). The "certificate" does not constitute the entire contract of insurance. In brief, the insurance company agreed for a named consideration to insure for one year a group of employees of the Trion Company, whose identity was to be determined by the possession of one of a large number of "certificates." The "certificate" refers to the policy as the basis of its issuance, and the policy refers to the "certificate."

"The policy and the certificate are interlocked like the Siamese twins." *Carruth* v. *Ætna Life Ins. Co.*, 157 Ga. 608, 616 (122 S. E. 226). See also Wann v. Metropolitan Life Ins. Co. (Tex. App.), 41 S. W. 50; Provident Life & Accident Co. v. Nicholson, 157 Va. 345 (160 S. E. 5); *Ætna Life Ins. Co.* v. *Padgett*, 49 Ga. App. 666 (176 S. E. 702). And when the policy dies or ceases to exist, the certificate is no longer binding on the insurance company. Whether or not a policy of group insurance shall be continued depends on the will of the primary contracting parties thereto. The employer is not obliged, against his will, to continue a policy of insurance after the contract period. "Where premiums on a group policy are paid by an employer, and the master policy issued to such employer, he has the right to cancel such policy." Austin v. Metropolitan Life Ins. Co., supra. In Davis v. Metropolitan Life Ins. Co., 161 Tenn. 655 (32 S. W. 2d, 1034), it was held that a city to which a group policy of insurance had been issued for the benefit of its employees might cancel the same, and that such action would bind the employees holding certificates thereunder. It is clearly apparent that the Trion Company had the right to refuse to renew the master policy in this case, and to take another policy in the same or a different company, if it should so desire. The holders of the certificates had no vested right to a continuation of such policy over the objection of the employer.

An agent of the insurance company who comes to deliver certificates under a new master policy which is being issued to the Trion Company, and to take up the certificates under the prior policy, under the express terms of such policy is without authority to hold the same in effect for a particular purpose, where it appears that the company has neither accepted any premiums thereunder, nor received any consideration for so doing, but on the contrary, expressly and in writing, has agreed with the Trion Company to cancel said policy. The payment by the employee to the Trion Company of certain amounts of money as premiums, where it appears that the insurance company never received the sums so paid, nor were they tendered to it, will not bind such insurance company. Thus, if the insurer was not to be bound by the alleged misrepresentation of this special agent, Mitchell, and if neither the employer nor the employer's agent is an agent of the insur-

ance company, or clothed with any power to waive any of the conditions of the group policy of insurance covering the employees of such employer, the insurer is not liable. Duval *v.* Metropolitan Life Insurance Co., 82 N. H. 543 (136 Atl. 400, 50 A. L. R. 1276), is one of the leading cases, if not the leading case, on this question, and we quote that part of the language of the opinion which we think is particularly applicable to the facts of the instant case:

"The claim that the employer is the agent of the insurer in the collection and forwarding of premiums is wholly without foundation. By the express terms of the policy the company looks to the employer for the payment of the premiums. It has no concern with whether it collects part of them from the employee or not. The employee is insured because he has made application, and because the employer promises to pay the insurer the premiums. The promise to pay is for the benefit of the employee. Again, it is urged that as the provisions as to notice of claim, proof of loss, etc., are contained in the master policy, therefore the employer is the insurer's agent to give information on these subjects. It is said that the whole purpose of the group-insurance scheme would be frustrated unless the employer co-operates with the employee as agent 'by implication' for the insurer. That the employer is expected to co-operate with the employee is evident. The whole scheme is paternalistic. The error of counsel, here and elsewhere, is in failing to appreciate that the paternalism is that of employer towards employee. It does not have the effect of making the benevolent parent the agent of the party with whom he inaugurates a contract for the benefit of his children. The line dividing the three parties to the contract according to their interest and real position in these transactions puts the employer with the employee, as opposed to the insurer. Much is made in argument of the proposition that the whole plan and scheme was to furnish protection to the insured. Of course this is true, but it does not follow that the insurer is made chargeable with the conduct of the intermediary who sought to bring the insurer and the insured into relation, who offered and bound itself to pay to the insurer the price demanded for the insurance, and who agreed to perform the office of keeping the insurer informed as to who had accepted, and come under the terms of, the offer. The em-

ployee was told that the employer held the master policy, and must be deemed to have known that such holding was on his behalf, and not for the insurer. He knew that the employer was paying a part of the premium. In short, he knew the whole general scheme. His employer was undertaking to benefit him by transacting the insurance business and carrying a part of the cost. His confidence was put in his employer, not in an agent of the insurer. . . This [group insurance] is an arrangement instituted by the employer for the benefit of the employees. The employer sought and obtained from the insurer a contract for their benefit. Naturally the employee looks to the employer for guidance and information. There is nothing sinister in such a situation. Their interests are not adverse, but common. The outstanding fact that the employer has interested itself in this matter, and has undertaken a part of the financial burden for the benefit of the employees, shows that in the ordinary course of events the employee would be expected to place reliance in his benefactor, and would think of the employer in that light rather than consider it to be the representative of the insurer. The insurance was something the employer and employees were to obtain by their joint efforts. It was not something the employer was engaged in getting as a representative of the insurer. If the situation be looked at from the standpoint of the insurer, this conclusion is still more evident. It was informed by the employer that the employer desired to initiate this form of insurance for its employees. The insurer issued a policy that admittedly gave full information to the employer. The employer was left free to determine whether it would contribute the whole premium or collect a part of it from the employee. That was a matter between them, and as to it the insurer had no interest. Co-operation between employer and employee was manifestly expected by the insurer. But that co-operation was entirely on behalf of the insured. Having furnished to the party acting for and in behalf of the employees full and accurate information as to the terms of the contract it would make, the insurer would not be required to go further or be held responsible for the way in which the employer imparted the information to the employee for whom the employer was acting. If the employer failed of this duty, the employee might have a cause for complaint against his unfaithful

representative (Page *v.* Parker, 40 N. H. 47, 69), although he would have none against the third party with whom the representative dealt. When the formal contract was issued, it was the natural thing to do to state the terms fully in the group or master policy issued to the employer. As the percentage of premium to be paid by employer and employee was not fixed by the insurer, but left to the agreement made between employer and employee, it is plain that the insurer could not state in the individual certificate the premium to be paid by the employee. Employer and employee are inescapably yoked together in the undertaking, and when the insurer told the employee, in his individual certificate, that the full terms of the contract were stated in the policy held by the employer, it discharged its duty to him in a reasonable way. There is nothing in the situation or conduct of the parties from which an implied general agency on the part of the employer to make representations or waive rights for the insurer could be found."

Under the group-insurance policy, the employer is acting for itself and on behalf of its members in order to obtain cheap insurance for them through a group plan. It is representing itself and its members, *not the insurance company.* Its only authority is to issue a certificate of insurance to its employees and to remit the premium therefor to the insurance company, but this does not make it a general agent. The employer is not in the insurance business, but is rendering all the service it can for its employees. It receives no compensation from the insurance company. The latter has no control over its rules for hiring and firing its employees, nor has the insurance company any control over the employer as to whether it pays all of the insurance premium or only a part of it, except under the provision in the policy "that no employee shall be charged more than fifteen per cent. per week each per thousand of insurance." As far as the insurance company is concerned, the difference between the insurance in this case and the case of an individual is that here a single group is being insured rather than a single person, with a resultant saving to the members of the group, and the employer and the employees are all members of this group. Thus, the line dividing the three parties to the contract, the employer, employees, and insurance company, according to their interest and real position in these

transactions, puts the employer with the employee as opposed to the insurance company. Applying the above rules to the facts in this case, we do not think the employer or the employer's agent was an agent of the insurer, or clothed with any power to waive any of the conditions of the group policy of insurance covering the employees of such employer. The court did not err in directing the verdict for the defendant, and in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*