28783.   BERRY *v.* TRAVELERS INSURANCE COMPANY
*et al.*

DECIDED MARCH 13, 1941.   REHEARING DENIED APRIL 3, 1941.

*O. Lee White,* for plaintiff.

*Neely, Marshall & Greene, W. Neal Baird,* for defendants.

SUTTON, J.   Mrs. Willie Mae Berry, as beneficiary, brought suit against the Travelers Insurance Company and Atlanta Woolen Mills, alleging, that on December 18, 1933, and continuously therefrom to and including February 10, 1938, there was a master life-insurance policy issued and delivered to the Atlanta Woolen Mills by the insurance company, whereunder Artie Gray, the mother of the plaintiff and an employee of the Atlanta Woolen Mills held a certificate of insurance in the sum of $1000; that the original and duplicate of the master policy were in the possession of the defendants, and a copy thereof had been refused the plaintiff, and for this reason a copy of that policy could not be attached to the petition, but a copy of the certificate was attached as exhibit A; that the insured employee died on or about February 10, 1938, before attaining the age of sixty years; that the certificate had been issued to her after she had completed more than one year of service with the employer; that on or about June, 1937, the insured became wholly disabled and prevented by bodily disease, cancer, from engaging in any occupation or employment for wage or profit, and so continued until her death on February 10, 1938; that on December 20, 1937, the defendants wrongfully, wilfully, and maliciously attempted to cancel the master or group policy for the purpose of preventing payment to the plaintiff beneficiary, and at that time the disability of the insured was known to them; that the certificate of insurance was in full force and effect on December 18, 1933, to and including the date of the death of the insured, and all premiums had been paid until and including the date of the death of the insured, and from that date the defendants waived payments and refused to accept further payments on the certificate

of insurance, for the reason that the insured was not required, under the policy and the practice of the defendants, to pay further premiums while so wholly and continuously disabled and while she remained an employee of the Atlanta Woolen Mills, it being alleged that she was an employee continuously from and previously to the date of her becoming continuously and wholly disabled in June, 1937, and to and including the date of her death on February 10, 1938; that the insurance company expressly denied liability on February 28, 1938, and declined the claim of the plaintiff, on the ground that at the time of the insured's death no insurance was in force, and said waivers have repeatedly been made verbally and in writing on several dates since that time; that the insurance company has been unreasonably litigious in refusing to pay any benefits, which refusals were in bad faith, and by reason thereof the plaintiff is entitled to recover against each of the defendants judgment for $1000 as the full amount of the benefits provided for under the certificate, with interest, and a penalty of $250 because of the bad faith of the defendants in maliciously attempting, on December 20, 1937, to cancel the policy to prevent payment, while knowing of the insured's disability and her approaching death, and in declining to pay the benefits under the certificate, and because of such acts the plaintiff is also entitled to an additional fifty per cent. of the amount of the certificate, as reasonable attorney's fee in prosecuting her action. She prayed for judgment in the stated amounts.

The copy of the certificate attached to the petition provides: "Under and subject to the terms, conditions, and provisions of a policy of group life insurance, No. G7281, issued and delivered to Atlanta Woolen Mills, . . the life of Artie Gray (hereinafter called the employee) is insured initially for the sum of one thousand (1000) dollars, payable to Willie Mae Berry, daughter, as beneficiary. . . Payment of the amount of the employee's insurance under said policy shall be made . . to the beneficiary designated by the employee, provided death shall occur while the group policy shall remain in force, and (a) while the employee is insured thereunder in accordance with the terms, conditions, and provisions thereof, or (b) within one year from the date of termination of the insurance of the employee and prior to the sixtieth anniversary of his date of birth, provided he shall have been wholly

disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit at the date of the termination of his insurance and shall have been continuously so disabled from such date to the date of his death, and provided the due proofs of the death of the employee, including proofs of such disability, shall have been received by the company within six months of the date of death; except that no payment shall be made in any such case where the period from the date of termination of insurance to the date of death shall be greater than the period that the insurance of the employee shall have been continuously in force at such date of termination, or where the death shall occur on or after the effective date of an individual policy issued to the employee in accordance with the provisions of the conversion privilege as set forth below. . . The insurance of any employee covered under said policy shall terminate when his employment with the employer shall terminate, or prior thereto when the employee shall cease to pay to the employer the required amount to apply toward the premium for this insurance; provided, however, that in a case where at the time of termination of employment the employee shall be insured and shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wages or profit, the insurance will remain in force as to such employee during the continuance of such disability and while the group policy shall remain in force until the employer shall notify the company to terminate the insurance as to such employee." The certificate also provides for a conversion privilege, whereby any employee of the employer covered under the group policy, in case of the termination of his employment for any reason whatsoever, shall be entitled to have issued to him, without further evidence of insurability, and upon application made as described, and upon payment of the applicable premium, a policy of life insurance, but not term insurance, in an amount equal to the amount of the employee's protection under the certificate at the time of the termination of employment, which conversion shall immediately and automatically terminate and cancel any insurance of the employee then in force under the certificate, the amount of which is to be determined as specified in the certificate.

By amendment the plaintiff alleged, that at no time prior to the death of the insured did the insurer or the plaintiff know the con-

tents of the master policy, or that there was any substantial difference between it or the certificate, particularly with reference to the provisions under which the policy would lapse, the provisions in that respect being more favorable to the insurance company in the master policy than to the insured, the master policy being held exclusively by the insurance company "and/or" the Atlanta Woolen Mills, a copy of which was not furnished to the plaintiff or her attorney until the latter part of 1939, about a year after the death of the insured, although repeatedly theretofore the plaintiff's attorney had requested the insurance company to furnish a copy, which request was denied until the latter part of 1939; that the plaintiff "and/or" the insured were led by the insurance company "and/or" the Atlanta Woolen Mills to believe, until after the death of the insured and the time when the final premiums were paid, that the provisions of the certificate as to the lapsing of the insurance governed the rights of the insured; and that it would be inequitable for the insurance company to be permitted, after the death of the insured, to insist upon the master policy being attached to the petition, for reasons above set out, and because the provisions as to termination of the insurance are in the master policy substantially different from those contained in the certificate and more favorable to the insurance company.

The defendants filed general and special demurrers, one ground of special demurrer being that no copy of the master or group policy was set forth. This special demurrer was sustained, no ruling on the general demurrers being made at the time; and the plaintiff was required to set up a copy of the master policy. The plaintiff amended by setting up a copy, and alleging in substance that on numerous occasions after the death of the insured the insurance company, on demand, refused to show her or her attorney a copy of the master policy, taking the unqualified position that no insurance was in force at the time of the death of the insured, but did, in the latter part of 1939, after the filing of her suit, furnish a copy which, in compliance with the court's order was attached to the petition. This copy contains the following provisions: "The Travelers Insurance Company, Hartford, Connecticut, by this policy of insurance agrees to pay at the home office of the company in Hartford, Connecticut, death benefit, the amount determined by the plan of insurance specified in the application for

this policy, immediately upon receipt of due proofs of death of any employee of Atlanta Woolen Mills, hereinafter called the employer, insured under the plan aforesaid in accordance with the provisions hereinafter contained, provided such death shall occur while this policy shall remain in force and (a) while the employer is insured hereunder in accordance with the terms, conditions, and provisions hereof, or (b) within one year from the date of termination of the insurance of the employee and prior to the sixtieth anniversary of his date of birth, provided he shall have been wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit at the date of the termination of his insurance, and shall have been continuously so disabled from such date to the date of his death, and provided the due proofs of the death of the employee, including proofs of such disability, shall have been received by the company within six months of the date of death, except that no payment shall be made in any such case where the period from the date of termination of insurance to the date of death shall be greater than the period that the insurance of the employee shall have been continuously in force at such date of termination, or where the death shall occur on or after the effective date of an individual policy issued to the employee in accordance with the provisions of the paragraph entitled 'Employee's individual certificate and conversion privilege.' The amount payable upon the death of an employee shall be paid in accordance with the paragraph entitled 'Modes of Settlement.' . . This policy shall be effective from the 20th day of December, 1932, for a term of one year beginning and ending at 12.01 a. m. standard time at the employer's address, from which date all insurance years and months shall be computed, and may, subject to the payment of premiums, be renewed from year to year as hereinafter provided. [Then follow provisions as to modes of settlement, amounts, etc.] . . The insurance of any employee covered hereunder shall terminate when his employment with the employer shall terminate, or prior thereto when the employee shall cease to pay to the employer the required amount to apply toward the premium for this insurance; provided, however, that in a case where, at the time of termination of employment the employee shall be insured and shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment

for wage or profit the insurance will remain in force as to such employee during the continuance of such disability and while this policy shall remain in force until the employer shall notify the company to terminate the insurance as to such employee, and premium for such period shall be computed, adjusted, and payable in accordance with the provisions hereof relating thereto." Then follow provisions for an individual policy, under conversion privilege, at termination of employment, without proof of insurability.

It was alleged, that the plaintiff did not vouch for the copy of the group policy as attached, she contending that the provisions as to the termination of the policy as contained therein are not binding on her and should not be incorporated in the suit, in that they conflict with the provisions in the certificate, which latter provisions constitute the only information the insured had during her lifetime, or the plaintiff as beneficiary had before or since the insured's death, as to the lapsing of the insurance, being sections (a) and (b) of said certificate, and that the defendants, up to the latter part of 1939, led the insured and the plaintiff to believe that the insurance was in force, and that under the laws of this State the ambiguity or difference should be construed in favor of the insured and the beneficiary and plaintiff not be bound by the provisions in the master policy, the defendants, until the time of the death of the insured, having led the insured and the plaintiff to believe that provisions (a) and (b) of the certificate would control, and that the beneficiary could recover provided the death of the insured occurred "within one year from the date of termination of the insurance of the employee and prior to the sixtieth anniversary of her date of birth, provided she shall have been wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit at the date of the termination of her insurance, and shall have been continuously so disabled from such date to the date of her death;" that the insured's death occurred within three months from the date of the attempted cancellation of the certificate, unknown by the insured or the plaintiff until after the death of the insured; that the provisions of the certificate above quoted do not appear in the alleged copy of the master policy delivered by the defendant's counsel in the latter part of 1939, and it would be inequitable and unjust to permit the insurance company to rely upon the alleged copy of the

master policy; that the plaintiff did not have an adequate and complete remedy at law, and unless a court of equity assume jurisdiction and cancel the provisions of the alleged master policy which conflict with the certificate, the plaintiff would suffer irreparable loss and damage; and that a court of equity should cancel such provisions of the alleged master policy and construe the plaintiff's right to recover to be under provisions (a) and (b) of the certificate. She prayed that the defendants not be allowed to rely on any provision of the master policy which conflicts with the certificate, and that such provisions of the alleged master policy be construed as applying against the plaintiff only in so far as they are not in conflict with the certificate.

The court sustained the general demurrers, and the plaintiff excepted and took the case to the Supreme Court, which transferred the case to this court, ruling that "there is no fact alleged which would remotely suggest a right to invoke the equitable remedy of cancellation based on fraud, accident, or mistake in the execution of the contract, or other equitable remedy; but on the contrary the petition shows on its face that the rights of the plaintiff, if any exist, depend upon a legal construction of the certificate and master policy when taken together, which in fact is all that is asked by the prayers." *Berry* v. *Travelers Insurance Co.,* 190 *Ga.* 772 (10 S. E. 2d, 753). While the allegations suggest in some measure a suit for wrongful cancellation of a policy of insurance, the chief purport of the petition appears to be the assertion of a right to recover the face value of a certificate of insurance; and as counsel for the plaintiff bases his argument only on that ground, the discussion hereinafter will be limited to that question. The complaint appears to be that premiums were paid by the insured, and accepted by the employer, on the assumption that the right to recover the face value of the certificate was to be determined by the provisions of the certificate; that neither the insured nor the beneficiary knew of the provisions of the master or group policy until the latter part of 1939, after the filing of the present suit, upon receipt of a copy of which it was discovered, as alleged, that the provisions thereof were in conflict with those of the certificate as to the conditions under which recovery could be had for the death of the insured. In brief, it is sought, by the petition as amended, to make it appear that under the certificate recovery could be had

where it was shown that certain provisions had been met, not including a provision that the death of the insured must have occurred while the master or group policy was in force, whereas under the alleged master or group policy recovery could not be had if at the time of the death of the insured such policy was not in force; and that the two must be construed most strongly against the insurer and it be determined that the plaintiff is entitled to recover.

It appears from the petition that a master or group policy was issued by the insurance company to Atlanta Woolen Mills on December 18, 1933, and that on the same date a certificate was issued to Artie Gray, the plaintiff's mother, who was then and had been for more than a year an employee of Atlanta Woolen Mills; that in June, 1937, the insured became wholly and permanently disabled, and died on February 10, 1938; that on February 28, 1938, the insurance company refused payment of the plaintiff's claim, and has continued to refuse payment, on the ground that recovery could not be had, inasmuch as the insurance was not in force at the time of the death of the insured. It is alleged that the defendants attempted, on December 20, 1937, before the death of the insured, to cancel the master or group policy, but it is not specifically alleged that the insurance was in fact terminated. Construing the petition most strongly against the pleader on general demurrer, it must be taken that the master or group policy ceased to be in force on that date. The plaintiff concedes that the master or group policy provides that there can be no recovery unless the master or group policy was in force at the time of the death of the insured, but misconceives the fact that the certificate itself so provides. As will be observed from a reading of its provisions hereinbefore set forth, it stipulates that "The insurance of any employee covered under said policy [the group policy] shall terminate when his employment shall terminate, or prior thereto when the employee shall cease to pay the employer the required amount to apply toward the premium for this insurance," and though it is provided that "in a case where, at the time of termination of employment, the employee shall be insured and shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit, the insurance will remain in force as to such employee during the continuance of such disability," the

stipulation just quoted concludes with a proviso, "and while the group policy shall remain in force, until the employer shall notify the company to terminate the insurance as to such employee." In other words, the insurance under the certificate would remain in force, in case of the described disability, even after the termination of the employment if (1) the group policy was still in force, and (2) if the group policy still being in force, the employer had not notified the insurance company to terminate the insurance as to such employee. It is also stipulated in the certificate that "Payment of the amount of the employee's insurance under said policy [the group policy] shall be made . . to the beneficiary designated by the employee, *provided death shall occur while the group policy shall remain in force* [italics ours] and (a) while the employee is insured thereunder in accordance with the terms, conditions, and provisions thereof," or (b) the conditions of disability, etc., relied on by the plaintiff, exist. It is thus made clear that whether the facts indicated under (a) exist or the facts indicated under (b) exist, a showing under either is not sufficient to establish a right to recovery, unless it also appears that the group policy remains in force. There is no conflict between the group policy and the certificate in the respect asserted by the plaintiff, but in each there is a contractual provision that recovery can not be had, notwithstanding any continuing disability, unless the death of the insured occurs while the master or group policy is in force. As before stated, the petition, properly construed, shows that the group policy was not in force at the time of the death of the insured, having been canceled on December 20, 1937; and it remains to be determined only whether or not the cancellation was lawful.

The petition alleges that the group policy was wrongfully and maliciously canceled for the purpose of preventing payment to the plaintiff. But the presence of an ulterior motive in canceling a policy of insurance is immaterial if the right to cancel exists. A contract of group insurance is one between the employer and the insurance company, and the right to cancel is in the employer. *Travelers Insurance Co.* v. *Conine,* 37 *Ga. App.* 500 (140 S. E. 784) ; *Curd* v. *Travelers Insurance Co.,* 51 *Ga. App.* 306, 310 (180 S. E. 249) ; *Johnson* v. *Metropolitan Life Insurance Co.,* 52 *Ga. App.* 759, 763 (3) (184 S. E. 392) ; *Lancaster* v. *Travelers Insurance Co.,* 54 *Ga. App.* 718, 720 (189 S. E. 79). It was not in the

power of the insured or the beneficiary to keep the group policy in force or to cancel it. *Travelers Insurance Co.* v. *Conine, Curd* v. *Travelers Insurance Co.*, supra. The insured was not entitled to notice of cancellation. *Johnson* v. *Metropolitan Life Insurance Co.*, supra; *Cutledge* v. *Ætna Life Insurance Co.*, 53 *Ga. App.* 473, 475 (186 S. E. 208). It can not be said that any right to recovery had accrued merely because of the fact that the disability of the insured had already occurred before the cancellation of the group policy, because it is distinctly stipulated in both the group policy and the certificate that payment was to be made only in the event that the insurance was in force at the time of the death of the insured. If it be said that the provision is a harsh one, the answer is that the rights of the parties are to be determined under the contract as made, and it is not within the power of this court to rewrite it. The only vested right the insured enjoyed under the certificate, in the event of termination of his employment, was the right to purchase an individual policy, under the conversion privilege of the certificate, without proof of insurability. *Cutledge* v. *Ætna Life Insurance Co.*, supra.

No case exactly similar on its facts seems to have been before the appellate courts of this State, but the ruling in *Lancaster* v. *Travelers Insurance Co.*, supra, is controlling here. In that case the plaintiff sued to recover disability benefits under the terms of a group policy and a certificate. The insurance company defended on the ground that the insurance had been canceled. It appeared that the original group policy, which was renewable annually and under which the plaintiff claimed by virtue of his certificate, had been canceled on April 11, 1933, by agreement between the employer and the insurance company, and a new and different group policy had been issued and delivered to the employer. The employee had become disabled on June 9, 1933, and refused to surrender his old certificate, which had been issued to him on December 14, 1932, and continued to pay to the employer the amounts he had been paying under the old policy, but these sums were never sent to the insurance company. While in that case the policy relied on by the plaintiff had been canceled before the disability arose, and in the present case the disability arose before the cancellation of the group policy, it was said in the *Lancaster* case: " 'The policy and the certificate are interlocked like the Siamese twins.'

[Citing.] And when the policy dies or ceases to exist, the certificate is no longer binding on the insurance company." The first headnote reads: "The contracting parties in a policy of group insurance are primarily the employer and the insurance company. The employer has the right to continue such a policy, or to refuse to continue, and his refusal to continue, under an executed agreement made with the insurance company to cancel, will not continue any right in the holders of certificates issued under such group policy to hold the insurance company liable thereon for a loss occurring after the cancellation of such master policy."

In *Johnson* v. *Travelers Insurance Co., 51 Ga. App.* 243 (180 S. E. 387), the plaintiff sued to recover disability benefits. The policy provided that benefits would be paid only if such insurance was in force at the time of the furnishing of proof of loss, and "The insurance of any employee covered hereunder shall end when his employment with the employer shall end, except in a case where at the time of such termination the employee shall be wholly disabled and prevented by bodily injury or disease from engaging in any occupation or employment for wage or profit. In such case the insurance will remain in force as to such employee during the continuance of such disability for the period of three months from the date upon which the employee ceased to work and thereafter during the continuance of such disability *and while this policy shall remain in force until the employer shall notify the company to terminate the insurance as to such employee.*" (Italics ours.) The court said: "Under the terms of the policy as above set forth, the protection of the insurance ended whenever the employment terminated, or prior thereto upon the discontinuance of payment of premiums for the insured by the employer, the company being liable only for any total and permanent disability in the amount of insurance in force under the policy at the time of the receipt of due proofs thereof. The policy further provided that upon the furnishing of such proofs all further payments of premiums became waived, and that upon the insured becoming wholly and permanently disabled while the policy was in force, the protection would be extended for three months from the date of such disability and thereafter until the employer actually notified the company to terminate the insurance. In other words, by the terms of the policy it clearly and plainly appears that the total and permanent

disability of the insured while the policy was in force would operate to stay its cancellation on account of a discontinuance of the employment or of nonpayment of the premium for at least three months and until the policy was thereafter actually canceled; and if prior to the expiration of the three months or prior to any subsequent cancellation, proof of such disability were submitted, the company would, without the payment of further premiums, pay the amount of insurance in force under the policy at the time of the receipt of such proofs. The contention of the insured that, since she became totally and permanently disabled while the policy was in force, her right of action under the terms of the policy became thereupon fixed, and that no subsequent cancellation of the policy could affect her accrued rights, fails to take into account that, upon the happening of such a disability, all subsequent liability was expressly made subject to the conditions and provisions set forth in the contract, under which the insurance payable would be only the amount of insurance in force at the time of the receipt of due proofs of the total disability; and that at the time the proofs in the instant case were submitted, the policy had already been canceled in accordance with its terms after the three-months stay had 'expired." See Baker *v.* Travelers Insurance Co., 202 N. C. 432 (163 S. E. 110), in which it was held by the Supreme Court of North Carolina that under a group policy insuring an employee against death occurring during its continuance a recovery was not authorized where it appeared that the disability arose while the policy was in force but had been canceled before the death of the insured and where the provisions of the policy were similar to those in the present case.

It is here alleged that the defendants canceled' the policy; and so it must be taken that, the policy having been issued only by the insurance company, the cancellation was at the direction of the employer and with its consent. The policy was originally written to become effective on December 20, 1932, for a period of one year, renewable from year to year by payment of an annual premium in advance; and as the cancellation took place on December 20, 1937, an anniversary of the effective date of the policy, it is inferable from the petition, no other facts appearing; that the employer merely allowed the policy to lapse for non-payment of a renewal premium, especially as it is pleaded and argued that the

plaintiff was not aware that the provisions as to the lapsing of the policy in the group policy were different from those in the certificate. In any event a proper construction of the petition as amended shows that the group policy was not in force at the time of the death of the insured; and under the plain and express terms of the group policy and the certificate recovery can not be had, notwithstanding the fact that the insured's disability arose before the cancellation of the group policy. It follows that the court did not err in sustaining the general demurrers.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*