Edith Joan BALLARD,
Plaintiff-Appellee,

v.

NORTH AMERICAN LIFE AND
CASUALTY COMPANY,
Defendant-Appellant.

Court of Appeals of Tennessee,
Western Section, at Nashville.

Nov. 29, 1983.

Application for Permission to Appeal
Denied Jan. 30, 1984.

Thomas W. Bell, Jr., Memphis, for defendant-appellant.

George E. Whitworth, Memphis, for plaintiff-appellee.

CRAWFORD, Judge.

Defendant, North American Life and Casualty Company (hereinafter Company), appeals from the order of the Chancery Court denying its motion for summary judgment and granting summary judgment to plaintiff, Edith Joan Ballard. Although Company has presented five issues for review, the first and paramount issue involves the construction of a group life insurance policy and the propriety of a summary judgment. Other defendants were originally included in the suit, but the present controversy involves only Company and Mrs. Ballard.

The pertinent facts as established by the pleadings, exhibits and affidavits are virtually undisputed:

Plaintiff's husband, Jack T. Ballard, was an employee of George A. Fulghum Company, an employer participating in a group insurance trust which provided group life insurance to employees of the employers participating in the trust. The group policy involved in this controversy was in effect from December 15, 1972, to March 15, 1977, and both before and after this period other companies had group policies in full force and effect covering the employees. Plaintiff's husband was an insured person under the policy of insurance issued by Company, and although the policy provided life insurance protection only, the policy did

contain a waiver of premium provision in the event of total disability of an insured person. In June of 1975, while the life insurance coverage provided by Company was in effect, Mr. Ballard became totally disabled. After notice of disability was given to Company, he was not required to pay any further premiums under the group policy. The group policy provided in part:

27. EXTENSION OF LIFE INSURANCE: An *Insured Person's* Life Insurance will remain in force after the date it would otherwise terminate pursuant to the following *31-Day Benefit* and *Total Disability Benefit.*

31–DAY BENEFIT: During the thirty-one days in which the *Insured Person* is eligible to exercise his Life Insurance Conversion Privilege in accordance with the Conversion Provision 31, whether or not applied for, such Insurance will be extended in an amount equal to the maximum amount the *Insured Person* is eligible to convert.

TOTAL DISABILITY BENEFIT: Such Insurance will be extended upon cessation of premium payments if the *Insured Person* furnishes the Company with due proof that *Total Disability* has existed uninterruptedly from the date premium payments ceased and submits to medical examinations, as provided below. Such proof of disability must be submitted within twelve months following cessation of premium payments and thereafter upon request by the Company.

The amount of Insurance extended will be the amount provided in the Schedule of Insurance but not in excess of the amount in force at the time of discontinuance of premium payments. If an *Insured Person* has Plan B insurance in force it will be extended for its then paid-up value and the balance will thereafter be provided under Plan A. Neither a Policy for his paid-up value nor the cash value of his Plan B insurance will be available to an *Insured Person* except upon subsequent termination of his insurance.

\* \* \* \* \* \*

TERMINATION: The *Total Disability Benefit* will terminate upon the earliest of (a) cessation of *Total Disability,* or (b) failure to submit proof of the continuance of *Total Disability,* or (c) failure to submit to medical examination as provided above, or (d) termination of this Policy. The *Insured Person's* Life Insurance will then terminate subject to the *31-Day Benefit* and he will be entitled to apply for an Individual policy in accordance with the Conversion Provision 31(i)(b) or (i)(c) as though *Active Service* had terminated at the beginning of such thirty-one days, unless he returns to *Active Service* and premium payments resume.

\* \* \* \* \* \*

31. CONVERSION OF INSURANCE: (i) If the insurance of an *Insured Person* terminates due to termination of *Active Service* (for) any reason other than death) or termination of *Active Service* in a class eligible for such insurance, such *Insured Person* will be entitled to have issued to him by the Company without evidence of insurability, upon application made to the Company within thirty-one days after such termination of insurance and upon payment of the required premium, an Individual policy, or policies, of life insurance as described in (a), (b) or (c) below. Sections (a) and (b) apply only to Plan B insurance. Section (c) applies to Plan A insurance.

As of March 15, 1977, the group policy was terminated and the Trust placed the group coverage with another insurance carrier. By letter dated March 30, 1977, Company notified Mr. Ballard:

North American Life and Casualty has notified us that under the waiver of premium provision of the master policy and your group certificate, the waiver of premium benefit terminated on March 15. When the coverage was changed from North American to the Guardsman Life

Insurance Company, Guardsman did not assume the waiver of premium claims which were filed under the North American contract.

This is to give you notice that North American has agreed to allow you to convert your policy to an ordinary life contract by April 15. Enclosed is a conversion form and notice for the first monthly premium.

Please call our office if you have any questions.

The letter apparently elicited no response from Mr. Ballard and the Chancellor found that Mr. Ballard failed to convert the insurance coverage as offered in the letter. Mr. Ballard died on February 6, 1978, approximately 11 months after Company's policy was terminated. The plaintiff asserted in the trial court, and asserts here, that by virtue of the policy provisions, the right of Mr. Ballard to the waiver of premium benefit vested while the policy was in full force and effect and therefore the policy could not be terminated by the Company while he was disabled. The Company, on the other hand, contends the policy language establishes that the Company may terminate the policy and upon such termination the waiver of premium provision is also terminated.

Although Company contends it had no policy of insurance covering Mr. Ballard at the time of his death, it alternatively denies liability by virtue of various policy defenses. The court did not allow Company to present proof on these other defenses, and this preclusion is asserted as error. As we have above indicated, we do not find it necessary to consider issues other than the issue of whether Mr. Ballard was insured by Company at the time of his death. As to this issue the material facts appear virtually undisputed and therefore summary judgment is the appropriate method for disposition. When there is no disputed issue of material fact, a summary judgment should be granted by the trial court. *See Stone v. Hinds,* 541 S.W.2d 598 (Tenn.App. 1976).

The Chancellor in granting the summary judgment to plaintiff and denying the summary judgment for Company held that Mr. Ballard's right to protection under the waiver of premium provision had become vested prior to the termination of the policy, and "that it would be inequitable to deny this widow beneficiary and the deceased protection under this policy because at the time he was offered the new policy he was disabled, may not have been financially able to avail himself to the opportunity and where there is an ambiguity, it is to be resolved in favor or [sic] the insured who did not draw the contracts and because denying the insurance to the widow under these circumstances would certainly not do equity."

■ In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and unjust. *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.,* 33 Tenn. App. 439, 232 S.W.2d 309 (1949).

■ In construing contracts, the words expressing the party's intention should be given the usual, natural and ordinary meaning. *Moore v. Life & Casualty Ins. Co.,* 162 Tenn. 682, 40 S.W.2d 403 (1931).

In *Guardian Life Ins. Co. of America v. Richardson,* 23 Tenn.App. 194, 129 S.W.2d 1107 (1939), the court set out the rule for construction of insurance contracts as:

[5-7] "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence (intention) as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties and embodying requirements, compliance with which is made

the condition to liability thereon. Neither does the rule prevent the application of the principle that policies of insurance, like other contracts, must receive a reasonable interpretation consonant with the apparent object and plain intent of the parties." (Citations omitted).

*Id.* 129 S.W.2d at 1115, 1116.

█ Where there is no ambiguity, it is the duty of the court to apply the words used in their ordinary meaning and neither party is to be favored in their construction. *Brown v. Tennessee Automobile Ins. Co.,* 192 Tenn. 60, 237 S.W.2d 553 (1951).

The Chancellor observed and we agree that this is a case of first impression. Counsel have not cited nor have we found Tennessee cases closely analogous. However, our research has revealed cases from other jurisdictions which furnish principles to guide us in our decision.

In *Berry v. Travelers Ins. Co.,* 64 Ga. App. 727, 14 S.E.2d 196 (1941), the beneficiary made virtually the same contention as plaintiff makes herein that the waiver of premium provision on total disability creates a vested right. In answer thereto the court said:

... It can not be said that any right to recovery had accrued merely because of the fact that the disability of the insured had already occurred before the cancellation of the group policy, because it is distinctly stipulated in both the group policy and the certificate that payment was to be made only in the event that the insurance was in force at the time of the death of the insured. If it be said that the provision is a harsh one, the answer is that the rights of the parties are to be determined under the contract as made, and it is not within the power of this court to rewrite it. The only vested right the insured enjoyed under the certificate, in the event of termination of his employment, was the right to purchase an individual policy, under the conversion privilege of the certificate, without proof of insurability. (Citations omitted).

14 S.E.2d at 201.

A case very similar to the case at bar is *Walker v. Fidelity Bankers Life Insurance Company,* 302 So.2d 397 (La.App. 1st Cir.1974). The insured under a group policy became disabled on March 28, 1970. On March 31, 1970, the group policy was terminated and a new group policy was obtained. The employee's disability continued until his death on March 15, 1971. The policy was a combination disability income policy and a life insurance policy with disability waiver of premium provision, and the Company made disability payments, but denied liability for death benefits. The waiver of premium provision provided:

"If any employee, while insured hereunder for life insurance and prior to his 60th birthday, shall become totally disabled (as herein defined), the company will continue the insurance in force on such employee, without payments of premiums, during the period he remains totally and continuously disabled but not exceeding one year from the date of termination of premium payments for such employee."

*Id.* at 398, 399.

The policy also provided:

"The insurance of an employee shall automatically terminate hereunder at the earliest time indicated below: '1. The date of termination of this policy'."

*Id.* at 399.

The Company contended that the waiver of premium clause along with all other provisions of the policy terminated when the master policy was terminated under the provision quoted above. In holding for the Company that there was no insurance in effect the court said:

█ We find this argument to be sound. The insurance contract, free of ambiguous language, determines the rights and duties of the parties, and must be enforced as it is written.... Once the master policy was cancelled, the insurer was relieved of any liability for the subsequent happening of the contingency covered by the policy.... As was decided by the trial judge, at the time the

master policy was terminated, the contingency insured against, death, had not occurred. Fidelity Bankers' contractual obligation was only to insure, although without payment of premiums; but the obligation to pay death benefits did not arise prior to the termination date of the policy. Also, the obligation to insure, with or without the payment of premiums, terminated on March 31, 1970. The occurrence of the disability did not give rise to a separate contract of "paid-up" life insurance, apart from the master policy.

*Id.* at 399.

We agree with this reasoning of the Georgia court, and find it quite appropriate to the case at bar.

In a case involving quite similar policy provisions, the North Carolina Supreme Court in *First National Bank of Anson County v. Nationwide Insurance Company*, 278 S.E.2d 507 (N.C.1981) held that where there is no conversion of the group life insurance coverage after termination, beneficiaries have no claim for benefits from the insurer. In so holding, the court held that coverage under the policy by virtue of waiver of premiums ended with the termination of the employee's employment.

■ Our review of the policy, and in particular the parts set out above, does not reveal any ambiguity. The plain meaning of the language is that the waiver of premium benefit terminates, among other things, upon termination of the policy. Nowhere can we find language revealing any indication for the vesting of a right to insurance under a disability waiver of premium benefit. To the contrary, we find as the Georgia court found in *Berry, supra*, that the insured's only vested right was the right to conversion without evidence of insurability.

■ The facts are undisputed that the contract of insurance issued by company terminated prior to the death of Mr. Ballard, Mr. Ballard had not exercised the conversion privilege extended to him, had paid no premium for insurance thereunder, and, therefore, was not insured by Company under any policy of insurance at the time of his death. With these undisputed facts, the court should have entered summary judgment in favor of Company on this suit based on the policy of insurance.

■ Our decision is fortified by another circumstance. When the group policy terminated, Mr. Ballard was receiving the disability waiver of premium benefit, and was notified by the Company of his conversion privilege upon payment of the proper premium. The letter from Company set out above is quite clear and ends with, "Please call our office if you have any questions." Apparently, both Mr. and Mrs. Ballard did nothing to question, protest or otherwise contest the interpretation put on the policy by Company, and their acts in this regard would indicate an agreement with the interpretation of Company. The acts and declarations of the parties may be considered by the courts to determine the interpretation given by the parties themselves to a contract. *See Canton Cotton Mills v. Bowman Overall Co.*, 149 Tenn. 18, 257 S.W. 398 (1924). The rule of practical construction has long been recognized in this state as pointed out by Justice Brock in *Hamblen County v. City of Morristown*, 656 S.W.2d 331 (Tenn.1983):

■ The rule of practical construction is particularly applicable to this case. That rule, long recognized and applied in this jurisdiction, is that the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted by the court and that to this end not only the acts but the declarations of the parties may be considered. *Womble v. Walker*, 181 Tenn. 246, 181 S.W.2d 5 (1944); *American Barge Line Co. v. Jones & Laughlin Steel Corporation*, 179 Tenn. 156, 163 S.W.2d 502 (1942); *Sherman v. Cate*, 159 Tenn. 69, 16 S.W.2d 25 (1929).

*Id.* at 335.

In the instant case, since there is no dispute as to any material facts, summary judgment is appropriate. Judgment is entered for defendant North American Life and Casualty Company and this case is

dismissed. The costs of appeal are adjudged against appellee.

TOMLIN and HIGHERS, JJ., concur.