**Bobby Ray BRADLEY, Plaintiff,**

v.

**OLD REPUBLIC LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. H87–0068(W).

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Nov. 22, 1988.

---

Michael B. McMahan, Hattiesburg, Miss., for plaintiff.

Louis G. Baine, Jr., Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

The question before the court is whether defendant Old Republic Life Insurance Company's cancellation of its group policy with the Federal Land Bank of New Orleans has the effect of relieving Old Republic from any obligation to continue plaintiff's life insurance under the group policy, where prior to the cancellation plaintiff incurred an injury which entitled him to disability and waiver of life insurance premiums benefits under the policy and where plaintiff claims he is now, on account of the disability, unable to purchase life insurance elsewhere. An anterior interrogatory which must be answered before the premiere question may be addressed is one dealing with choice of laws: what state law should be applied to this matter where the parties collide on their respective views of whether the applicable master policy at issue is one contracted in Louisiana, or one contracted in Mississippi. Having tried the matters before the court sitting without a jury, having weighed the evidence of authorities and arguments of counsel, the court pursuant to Rule 52, Federal Rules of Civil Procedure now announces its decision.

## FACTS

The pertinent facts as established by the evidence are virtually undisputed.

Plaintiff Bobby Ray Bradley, in April of 1979, borrowed a sum of money from the Federal Land Bank of New Orleans, Louisiana (hereinafter FLB of New Orleans). Pursuant to the lending requirements of FLB of New Orleans, plaintiff took out life insurance with Old Republic Life Insurance Company (hereinafter Old Republic) to cover the indebtedness, and designated FLB of New Orleans a creditor beneficiary. Plaintiff received a certificate of insurance, effective April 11, 1979, evidencing his status as an insured under the group life insurance plan. This group life insurance plan, # 25–8905–1, originally contracted between Old Republic and FLB of New Orleans in 1957, provided benefits of group life insurance, as well as disability benefits and a waiver of life insurance premiums.

In 1980, plaintiff suffered a back injury. Medical opinions later opined that the plaintiff was permanently and totally disabled under the terms of the policy, and after an investigation, Old Republic began paying plaintiff disability benefits under the policy provision which stated:

In the event of total and permanent disability of an Insured Debtor, as defined herein, provided such Insured Debtor is so disabled on the due date of his installment payment to the Policyholder and on said due date has been so disabled for at least six months, the Company will pay to the Policyholder a disability benefit in the amount of the Insured Debtor's installment payable to the Policyholder on such installment due date. Total benefits payable for all installments of an Insured Debtor falling due within any twelve month period shall not exceed $3,600 and the aggregate amount of benefits payable hereunder as to any Insured Debtor shall not exceed $18,000 for all periods of disability, whether such periods are continuous or separated by periods of recovery. All amounts paid hereunder shall be applied by the Policyholder toward the discharge of the indebtedness of the Insured Debtor.

Notwithstanding the previous acceptance of proof of total and permanent disability and the payments of any benefits therefor, the Company shall have the right prior to the Insured Debtor's installment due date to require proof of the continuance of such total permanent disability. If the Insured Debtor fails to furnish satisfactory proof as required by the Company, no further disability benefits shall be paid.

At one point Old Republic terminated the payments, contending that plaintiff had misrepresented medical data relative to a previous asthmatic condition. Old Republic's actions were prompted by various medical reports which referred to an asthmatic condition and by a statement sub-

mitted by plaintiff in which he himself mentioned a previous asthmatic condition. However, Old Republic reinstated the disability benefits after the involved physicians contacted Old Repulic and informed the company that their reports of an asthmatic condition were in error as the plaintiff suffered from an allergy, instead of asthma.

Upon the onset of his disability, plaintiff also qualified for benefits under the waiver of premiums clause. This provision provided as follows:

### WAIVER OF PREMIUM BENEFIT FOR PERMANENT TOTAL DISABILITY

In consideration of the payment of the life insurance premium by the debtor as provided in the group policy to which this Rider is attached, the Company, subject to the provisions, conditions, and limitations herein contained, agrees to waive payment of any renewal premium under the individual certificate issued to the Insured Debtor falling due while the Insured Debtor is totally and permanently disabled as hereinafter provided.

Hence, after notice of permanent disability was given to Old Republic, plaintiff was not required to pay any further premiums under the group policy. However, in order to preserve this waiver from year to year, plaintiff was yet obligated to submit data evidencing continuation of total permanent disability.

Sometime in 1983, the FLB of New Orleans closed and moved its operations to Jackson, Mississippi. Old Republic negotiated new group life insurance policies with the Federal Land Bank, now of Jackson, Mississippi (hereinafter FLB of Jackson). The first was negotiated in 1983, while the second was contracted in 1984. Both policies carried the same group policy number 31–8905–1. Plaintiff was never certificated as an insured under these two policies, and he never applied for such. Although the New Orleans office closed, plaintiff yet received his disability payments and waiver of premium benefits from Old Republic.

In June of 1986, Old Republic notified FLB of Jackson of its decision to terminate the group life insurance. Owing to rising costs and FLB of Jackson's refusal to raise rates, Old Republic decided that economic sense dictated termination of the policy. Sometime in December, 1986, FLB of Jackson notified plaintiff of the termination and advised plaintiff that arrangements had been made with the Minnesota Mutual Life Insurance Company of St. Paul, Minnesota, to provide him with mortgage life insurance protection. But, plaintiff was advised that Minnesota Mutual's plan did not contain a waiver of premium disability benefit. Convinced that Old Republic is obligated to continue in force the life insurance purchased under group policy 25–8905–1, the plaintiff has brought this diversity lawsuit pursuant to 28 U.S.C. § 1332, requesting injunctive relief requiring Old Republic to continue in force the life insurance, compensatory damages allegedly occasioned by pain and suffering on account of the cancellation, and punitive damages premised on Old Republic's alleged bad faith in the handling of this claim.

### CHOICE OF LAWS

■ The parties disagree whether Louisiana or Mississippi law controls the resolution of this dispute. Plaintiff opines that Mississippi law applies. Plaintiff's argument in support of his contention that Mississippi law controls is twofold: first, that plaintiff, a Mississippi resident, was insured under the group life insurance policies of FLB of Jackson, Mississippi, after FLB's move to Jackson, Mississippi; and second, that Old Republic consistently has applied Mississippi law to Bradley's insurance policy and claims and, thus, has waived any rights which it may have had to assert the application of Louisiana law, and is even judicially estopped from arguing same.

Defendant contends that Louisiana law governs. Starting with the premise that plaintiff was insured only under the group life insurance policy of FLB of New Orleans, Louisiana, defendant states that both the terms of the policy, as well as applicable law, dictate the choice of Louisiana law. The court agrees with the defen-

dant and finds that Louisiana law applies here.

The court rejects plaintiff's theory that at the time Old Republic cancelled the Jackson policies, that plaintiff was actually insured under the FLB of Jackson policies. Plaintiff admits that he never was certificated under these policies. And, he admits that he never even applied for certification under these policies. Further, he acknowledges that he continued to receive disability benefits from Old Republic after the FLB of Jackson policies went into effect, and until those benefits were exhausted, even though the FLB of Jackson policies did not provide for disability benefits. Nevertheless, plaintiff argues that indeed he was covered by the FLB of Jackson policies since various correspondence to him from Old Republic identified plaintiff's policy number as a "31", the prefix designating group policies issued in Mississippi.

Plaintiff's theory ignores the evidence. Old Republic has completely explained this circumstance. Old Republic employed a numbered classification system for its group policies where the double digit prefix identified either the state of issue or the state of the residence of the borrower. Documentary evidence clearly corroborates this explanation. The FLB of Jackson did not come into existence until 1983. So, under plaintiff's theory, before the year 1983, no policy or correspondence referring to a policy number should have carried a "31" number, since according to plaintiff the double digit prefix referred only to state of issue. Yet, the record contains correspondence, duplicate pay stubs, and file entries, all antedating the year 1983, which nevertheless carry a "31" number for plaintiff's policy. Hence, it is clear that as defendant states, the double digit prefix "31" was used to refer to the policy-holder's place of residence. Accordingly, plaintiff's argument lacks muscle.

This court expressly finds that plaintiff was insured only under the group policy issued by the FLB of New Orleans. That policy contains a choice of laws provision which provides as follows:

"It is agreed that the Policy shall be governed by the laws of the state wherein application is made and delivery is effected."

No party disputes the fact that Louisiana is the state wherein FLB applied for the policy and where delivery of the policy was effected. In contract cases, where the terms of the contract provide for the application of a particular state law for the interpretation and enforcement of the contract, the contractual provision will be enforced unless contrary to public policy. *American Standard Leasing v. Plant Specialties, Inc.*, 427 So.2d 555 (La.1983); *Casey v. Prudential Ins. Co.*, 360 So.2d 1386 (La.Ct.App.1978), cert. denied, 363 So. 2d 536; *Lauritzen v. Larsen*, 345 U.S. 571, 588–989, 73 S.Ct. 921, 931–32, 97 L.Ed. 1254 (1953). Of course, insurance policies, as they, too, are contracts are governed by the same rules. *Aero International v. United States Fire Ins. Co.*, 713 F.2d 1106, 1109 (5th Cir.1983). Courts and commentators specifically appear to favor upholding choice of laws provisions in group insurance contracts. *See generally* Restatement (Second) of Conflict of Laws §§ 187, 192; Annot. 53 A.L.R.3rd 1095 (1973 & Supp.1988).

■ Even if the choice of laws provision were invalid, this court would yet apply Louisiana law to this factual circumstance. Section 192, Comment "h" of the Restatement (Second) of Conflict of Laws, which pertains to life insurance contracts, states that even in the absence of a choice of laws provision, the rights of the policyholders against the group life insurance company should be determined according to the law governing the master policy. The rational for this rule is the desirability of uniformity of coverage among the group policy certificate holders. This analysis is not inconsistent with Mississippi's "center of gravity" test. *See Boardman v. United Services Automobile Association*, 470 So. 2d 1024 (Miss.1985). So, inasmuch as master policy 25–8905–1 was governed by Louisiana law, that state's law should determine the respective rights of the insureds under the policy.

Apparently foreseeing that cogent evidence and law point to coverage under Louisiana law, plaintiff argues that Old Republic has applied Mississippi law to Bradley's insurance policy and is estopped from now arguing that Louisiana law should control. Plaintiff cites *Highlands Insurance Company v. Allstate Insurance Company*, 688 F.2d 398 (5th Cir.1982), and *Sullivan v. McCallum*, 231 So.2d 801 (Miss.1970). Neither of these cases addresses this particular circumstance. Moreover, plaintiff's argued evidence of waiver was weak and completely unpersuasive. Thus, the court adheres to its earlier reasoning that Louisiana law applies.

### EFFECT OF CANCELLATION

■ Plaintiff would have this court hold that at the time of his disability he became vested with the right to continued life insurance coverage. He reasons that all insurance in force when he qualified for disability payments and waiver of premium benefits was frozen and is to remain in effect because premiums are waived, rendering the insurer powerless to cancel any features of the insurance contract. Defendant challenges this reasoning, instead contending that a valid cancellation of the policy occasions a termination of any life insurance coverage, on the theory that a vested right to disability benefits cannot give a vested right to death benefits contrary to the express language of the policy conferring such benefits.

There is cogent Louisiana law on the subject. In *Walker v. Fidelity Bankers Life Insurance*, 302 So.2d 397 (La.Ct.App. 1974), the court addressed a similar factual circumstance. There, a widow sought to recover life insurance benefits for the death of her husband from a group policy under which her husband had qualified for disability payments and a waiver of life insurance premiums, even though the policy had been cancelled after the onset of the disability, but before the death. Finding that at the time when the master policy was terminated that the contingency insured against, death, had not occurred and that Fidelity Banker's contractual obligation under the insurance contract rela-

tive to waiver of premiums was only to insure, the court entered judgment for Fidelity Bankers.

Then in *Ory v. Louisiana & Southern Life Ins. Co.*, 352 So.2d 308 (La.Ct.App. 1977), a Louisiana circuit court again spoke to a related situation. Again, the suit was brought to recover life insurance benefits under a group policy which was terminated after the plaintiff's husband became disabled, but before his death. The court reasserted the same principles as enunciated in *Walker*, but held differently only because the policy was deemed ambiguous.

Plaintiff attacks the reasoning espoused by these cases, asserting that the principle proclaimed by them deserves scant consideration since these cases are but juridical hybrids out of touch with modern jurisprudence. However, a survey of other jurisdictions debunks this assertion. Courts in Arizona, Arkansas, Georgia, Ohio, and Tennessee have all confronted similar circumstances and issued pronouncements akin to those in *Walker* and *Ory*. *See Barber v. Old Republic Life Insurance Company*, 132 Ariz. 602, 647 P.2d 1200 (Ariz.Ct.App. 1982); *Washington Nat. Ins. Co. v. Ollie*, 200 Ark. 1001, 142 S.W.2d 226 (1940); *Berry v. Travelers Ins. Co.*, 64 Ga.App. 727, 14 S.E.2d 196 (1941); *Ballard v. North American Life and Casualty Co.*, 667 S.W.2d 79 (Tenn.Ct.App.1983). *See also, Taylor v. Continental Assurance Co.*, 104 Ohio App. 78, 144 N.E.2d 213 (1956).

What all these cases, including *Walker* and *Ory*, teach is that the court must scrutinize the insurance contract to ascertain whether the terms of the policy mandate continued life insurance coverage in this circumstance, or whether the policy is so ambiguous on this point that coverage should be extended to the insured. Certainly, in perusing the provisions of the policy the court recognizes that language used must be given its plain meaning. *Gulf Building Services, Inc. v. Travelers Indemnity Co.*, 435 So.2d 477, 478 (La.Ct. App.1983) ("An insurance contract is not to be given a strained, forced, or unreasonable interpretation, but a fair, reasonable

and sensible construction compatible with the apparent object and plain intention of the parties as expressed in the words of the agreement."); *Ory*, 352 So.2d at 310. While actual ambiguity will be construed against the insurer who drafted the policy, when a policy's meaning and intent are clear, it is not for the courts to create ambiguity where none exists, or to, in effect, rewrite a policy to avoid "harsh" results. *Messina v. Metropolitan Life Ins. Co.*, 431 So.2d 911, 912 (La.Ct.App.1983); *Smith v. Western Preferred Casualty Co.*, 424 So.2d 375, 376 (La.Ct.App.1982) ("A clear and unambiguous provision in an insurance contract which limits liability must be given effect."). *See also Howard v. Johnson*, 328 So.2d 716, 718 (La.Ct.App. 1976); *Welch v. National Surety Corp.*, 206 So.2d 545, 547 (La.Ct.App.1968) ("It is not within the province of this court to rewrite the provisions of an insurance policy which is clear and unambiguous.").

The court fails to discern any ambiguity in the policy in question. On page one of the policy the following provision is found:

The Company agrees, immediately upon receipt of due proof of the death of any insured debtor, subject to the provisions and conditions of this Policy, *to pay the amount of insurance then in force on the life of such debtor* as specified in the paragraph entitled "AMOUNT OF INSURANCE." (Emphasis added).

Then, under Term of Insurance, the original provision read:

Insurance on the life of any debtor insured hereunder shall be issued for a term not longer than 18 months from the effective date and may be renewed by the payment of premiums as hereinafter set forth, provided, however, that the insurance shall terminate upon the renewal date next following the 75th birthday of the insured or upon the renewal date next following the repayment of the indebtedness of the debtor to the Creditor but in no event shall the terms of the insurance exceed twenty years.

The insurance upon the life of any debtor shall terminate if the required premium is not paid when due or in accordance with the provisions of the paragraphs entitled "Grade Period," and "Renewal and Cancellation."

But this was amended in 1973 to read:

(1) By deleting the first paragraph of the provision entitled "Term of Insurance" and substituting the following therefor:

"Insurance on the life of any debtor insured hereunder shall be issued for a term not longer than 18 months from the effective date and may be renewed by the payment of premiums as hereinafter set forth, provided, however, *that the insurance shall terminate upon the renewal date next following the (a) repayment of the entire indebtedness of the Insured to the Policyholder; (b) transfer by the Insured of his title to the property securing the indebtedness; or (c) the termination or cancellation of this Policy.*" (Emphasis added).

Although in 1975 this section, Term of Insurance, was amended to change the maximum insurable coverage, the 1975 amendment did not change any of the above language.

In the section entitled General Provisions, there is the following pronouncement:

Renewal and Cancellation: This Policy shall be automatically renewed from year to year by the payment of premiums as herein provided; provided, however, that during the first five years the Policy is in effect, the Policyholder may cancel this Policy on the anniversary date of the Policy by giving 30 days' written notice to the Company. After this Policy has been in effect for five years, either the Company or the Policyholder may cancel this Policy by giving thirty days' written notice to the other party. *Such cancellation shall in no event affect the insurance then in force for periods for which premiums have been paid under the Policy* and no debtor of the Policyholder or affiliated Creditor may become insured hereunder after the effective date of such notice. (Emphasis added).

The plain meaning of the policy is clear, all life insurance coverage ceased upon termination of the policy.

Still, plaintiff is heard to say that the policy is ambiguous, and he points to a place on plaintiff's certificate whereat the year 2004 is given for the final year of renewal. Plaintiff contends that this is misleading and gives one the impression that the policy would be in effect that period of time. But, plaintiff's argument is without merit. The year mentioned merely corresponds to the last year of plaintiff's twenty-five (25) year mortgage. Moreover, plaintiff's argument ignores the fact that the policy in question is a term policy which had to be renewed annually.

As previously mentioned, a fair reading of the policy negates the conclusion sought by plaintiff. Besides termination, several other contingencies are mentioned in the policy which upon their occurrence could cancel insurance coverage. The policy provides that should plaintiff pay off his loan, or transfer the collateral, those occurrences would terminate the insurance. Yet, plaintiff would have this court hold that the vesting of disability payments and waiver of life insurance premiums has the additional effect of eviscerating these contracted contingencies. Accordingly, under plaintiff's analysis, once plaintiff qualified for disability payments and waiver of life insurance premiums, plaintiff would be entitled to continued life insurance coverage even if plaintiff somehow paid off his loan or transferred the collateral. This argument is unacceptable. Instead, these contingencies undermine plaintiff's position and reaffirm the court's conclusion that a vested right to disability benefits and a waiver of life insurance premiums do not here convey a vested right to death benefits, in the absence of death, the contingency insured against. Thus, this court finds for the defendant, Old Republic Life Insurance Company, and against the plaintiff, Bobby Ray Bradley. A separate judgment shall be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED.