IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2005 Session

## MARLIN & EDMONDSON, P.C. v. NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 02-1794-IV     The Honorable Richard H. Dinkins, Chancellor**

-------

**No. M2004-02280-COA-R3-CV - Filed December 22, 2005**

-------

This case involves a denial of coverage under a professional liability insurance policy. The gravamen of this case is whether the Appellant/insurance company received proper notice under the policy, of a claim by Appellee/accounting firm. Appellee/accounting firm purchased the Policy through its usual insurance broker, also an Appellee in this appeal. Appellee/accounting firm notified Appellee/insurance broker of its claim, but no written notice was forwarded to Appellant/insurance company. The trial court found, *inter alia*, that notice to the Appellee/insurance broker constituted notice to the Appellant/insurance company. Consequently, the trial court entered judgment against Appellant/insurance company and dismissed Appellee/accounting firm's cause of action against Appellee/insurance broker. We reverse and remand.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Richard Glassman and R. Douglas Hanson of Memphis, Tennessee for Appellant, National Union Fire Insurance Company of Pittsburgh, P.A.

Grant C. Glassford of Franklin, Tennessee for Cross-Appellant, Marlin & Edmondson
Barry L. Howard and M. Kristin Selph of Nashville, Tennessee for Appellees, Maurice Pinson and Cooper, Love & Jackson, Inc.

### OPINION

Marlin & Edmondson, P.C. ("M&E," "Appellee," or "Cross-Appellant") is an accounting firm located in Nashville, Tennessee. M&E purchased a professional liability insurance policy (the

"Policy") through Maurice Pinson ("Pinson"), an independent contractor with Cooper, Love & Jackson ("CLJ," and together with Pinson and M&E, "Appellees"). The Policy was drafted and issued by National Union Fire Insurance Company of Pittsburgh, P.A. ("National Union," or "Appellant"), part of the AIG group. The term of the Policy was from August 1, 1996 to August 1, 1997. CL&J did not have a direct agency contract with AIG; consequently, when it was necessary to procure this type of coverage for M&E, Pinson went to Mid-South Benefits, which did have a written agency agreement with National Union.

The Policy at issue in this case is a "claims made" policy and consists of the "Accountants Professional Liability Insurance Declarations," which provides, in relevant part, as follows:

> **NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE INSURER DURING THE POLICY PERIOD. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

This portion of the declarations page is written in bold, red type. The Policy itself is entitled "Accountants Professional Liability Insurance Policy" and reads, in pertinent part, as follows:

### INSURING AGREEMENTS
I. Coverage

> To pay on behalf of the **Insured** all sums which the **Insured** shall become legally obligated to pay as **Damages** and **Claims Expenses** because of any **Claim or Claims**, first made against the **Insured** and reported in writing to the Company during the **Policy Period** or **Extended Reporting Period**, arising out of any **Act, Error or Omission** of the **Insured**....

II. Claims Made and Reported Basis

> This policy applies only to **Claims** first made against the **Insured** and reported to the Company or its authorized agent during the **Policy Period** or an **Extended Reporting Period**....

-2-

    \*            \*            \*

A **Claim** shall be deemed to have been reported when written notice of such **Claim** is received by the Company or its authorized agent. It is a condition precedent to coverage hereunder that all **Claims** be reported in compliance with Condition I Notice of Claim.

    \*            \*            \*

## CONDITIONS

I. Notice of Claim

Upon the **Insured** becoming aware of any **Act, Error or Omission** which could reasonably be expected to be the basis of a **Claim** covered hereby, written notice shall be given by or on behalf of the **Insured** to the Company or any of its authorized agents as soon as practicable during the **Policy Period** or **Extended Reporting Period**, together with the fullest information obtainable. If a **Claim** is made against the **Insured**, the **Insured** shall immediately forward to the Company every demand, notice, summons or other process received by the **Insured** or by the **Insured's** representative(s).

    \*            \*            \*

All notices of **Claims** or **Acts, Errors or Omissions**, demands or requests for payment provided for in this policy shall be in writing and addressed to:

National Union Fire Insurance Company
Accountants Professional Liability Claims Department
70 Pine Street
New York, New York 10270-0150;

Or its duly authorized agent.

(Emphasis in original).

The Policy does not define the term "agent," "authorized agent," or "duly authorized agent".

On or about July 2, 1997, Joe Edmondson, the president of M&E, was notified about a potential professional liability lawsuit against M&E to be filed by one of its clients, Ms. Akin.

-3-

Ms. Akin wished to enter into a tolling agreement to extend the statute of limitations in the matter for six months. Mr. Edmondson then called Mr. Pinson at CL&J to discuss the situation. On July 3, 1997, Mr. Pinson allegedly advised Mr. Edmondson that National Union had given permission for M&E to enter into the tolling agreement. That afternoon, M&E signed the tolling agreement and delivered it to the CL&J offices.

National Union's claim manager, Faye Brooks, testified that she "might have had a phone conversation" on July 3, 1997 regarding this incident but stated that notice was not sufficient under the Policy because it was not in writing. CL&J claims manager, Regina Harris, testified that she talked to Mid-South Benefits and provided it with information regarding the tolling agreement. Mid-South Benefits allegedly told Ms. Harris that it could not help and Ms. Harris needed to go directly to National Union. Ms. Harris then spoke with Faye Brooks on July 3, 1997 about the tolling agreement.

On or about December 27, 1997, Mr. Edmondson received the complaint filed against M&E in the underlying matter and immediately forwarded same to CL&J. Ms. Harris testified that she faxed a copy of this complaint to National Union on January 9, 1998, along with a cover sheet that read, in relevant part: "You [National Union] were notified of this incident on July 3, 1997 by the agent Maurice Pinson."

By letter of January 14, 1998, Louis.M. Glatt, a claim analyst for A.I. Management and Professional Liability Claim Adjusters, on behalf of National Union, acknowledged receipt of the complaint but declined to indemnify and/or defend M&E in the action. Specifically, the letter reads, in pertinent part, as follows:

> Your firm's last policy term with National Union expired on August 1, 1997 and your firm did not purchase an extended reporting endorsement. Consequently, you have no valid coverage with National Union. Your attention is directed to your inspection of the "Insuring Agreements" to your Accountants Professional Liability Policy which state:
>
> "Coverage
>
> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages and Claims Expenses because of any Claim or Claims, first made against the Insured and reported in writing to the Company during the Policy Period or Extended Reporting Period...."
>
> Accordingly, since the "General Liability Notice of Occurrence/Claim" form submitted by Cooper, Love and Jackson,

-4-

Inc. is dated January 9, 1998 and is outside the term of coverage for your policy, National Union disclaims coverage for this law suit.

With respect to your argument that you provided notice to Cooper, Love and Jackson, Inc. which would trigger coverage by National Union, you are again invited to inspect the "Conditions" section of your Accountants Professional Liability Policy with reference to "Notice of Claim". It states:

"Upon the Insured becoming aware of any Act, Error or Omission which could reasonably be expected to be the basis of a Claim covered hereby, written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable during the Policy Period or Extended Reporting Period, together with fullest information obtainable...."

You have indicated to Director Sarah Chermak and myself in a telephone conversation of this morning that at no time did you speak to any employee of [AIG] or National Union which is a member company of AIG. Furthermore, in a telephone conversation on January 12, 1998 with Director Chermak, Maurice Pinson of Cooper, Love and Jackson, your insurance agents, indicated to her that no written claim was made by his office until January 9, 1998 when his office submitted a copy of the suit papers served upon you and your firm. While Pinson's records indicate that he placed a telephone call to Director Faye Brooks of my office on July 3, 1997 to discuss the effects of a tolling agreement on your insurance coverage, neither Director Brooks nor Pinson have any record that a copy of the tolling agreement was submitted to National Union for its inspection, or that Pinson submitted a letter to National Union in accordance with the above-referenced "Notice of Claim" provisions of your policy describing any "act, error or omission which could reasonably be expected to be a basis of a claim..."

On June 18, 2002, M&E filed a "Complaint for Declaratory Judgment and Breach of Contract" (the "Complaint") against National Union seeking declaration from the trial court that National Union should provide coverage and indemnification under the Policy purchased by M&E for the underlying suit filed by Ms. Akin against M&E. On August 12, 2002, National Union filed its "Answer to Complaint for Declaratory Judgment and Breach of Contract," which denies that National Union has any obligation under the Policy to indemnify and/or defend M&E in the underlying suit. On November 1, 2002, M&E moved for leave to amend its Complaint. The Motion was granted, and, on November 18, 2002, M&E filed its "First Amended Complaint for Declaratory Judgment and Breach of Contract" (the "Amended Complaint"). The Amended

Complaint adds causes of action against Pinson and CL&J for negligence and breach of contract. Pinson and CL&J filed a joint "Answer" on December 31, 2002, in which they generally deny the material allegations of the Amended Complaint and specifically states that, at all times material to the suit, "Maurice Pinson was an agent for Cooper, Love & Jackson which acted as agent for National Union...." Likewise, on January 23, 2003, National Union filed its Answer to the Amended Complaint reiterating its previous position that it is not liable to M&E under the Policy and again specifically denying that neither Pinson nor CL&J is or was its agent.

On February 23, 2004, the case was heard before the trial court, sitting without a jury. At the close of proof, the Chancellor made the following, relevant findings from the bench:

> The primary issue or the penultimate issue, as I see it, was whether notice to Cooper, Love & Jackson was notice to National Union on July 3rd. The proof shows that Mr. Edmondson contacted Mr. Pinson on–or tried to contact him on July 2nd and contacted him on July 3rd and furnished him a copy of the tolling agreement in the afternoon of July 3rd. The evidence also shows that Ms. Harris had a conversation with Faye Brooks of National Union on the morning of July 3rd, and that Mr. Pinson followed that up a little later that morning and made a note that Ms. Brooks had agreed to the nine-month extension of time.
>
> In her testimony, while Ms. Brooks did not acknowledge or recall that call from Mr. Pinson, she testified that she did not dispute that it occurred. So I think that Cooper, Love & Jackson was notified in all other respects. The notification aspect, written notification aspect applicable to the policy occurred on July 3rd, within the policy period.
>
> *                             *                             *
>
> The other area in which National Union might be bound by the actions of Cooper, Love & Jackson is with respect to the policy, where the policy is, under the notice provisions of the policy, where notice is given to the company or any of its authorized agents. The question then becomes whether Cooper, Love & Jackson was authorized to get this notice under the terms of the policy. The proof is clear that there was not an agency agreement between Cooper, Love & Jackson and National Union.
>
> I do think that question, the fact that authorized agent is not defined in the policy, it's not designated in the policy and there is no proof before the Court of, at least there was none to the policyholder,

-6-

Mr. Edmon[d]son, about who the authorized agent was, that that must be construed against National Union, that prepared the policy.

It's clear that Mr. Edmon[d]son relied on Cooper, Love & Jackson and that Cooper, Love & Jackson took actions which were consistent with both what Mr. Edmon[d]son needed and what I think clearly the company contemplated in terms of its notice, I mean, National Union contemplated in terms of its notice provisions. In that regard, I note that in...the letter from Mr. Glatt [*see supra*]...that letter declining coverage did not raise the authority issue.... In fact, it talks about getting a claim form from Cooper, Love & Jackson. It says that, it's outside the term of coverage of your policy. Never said Cooper, Love & Jackson is not our authorized agent....

So I think that there was no claim...by National Union that Cooper, Love & Jackson was not authorized to at least handle that initial receipt and processing of the claim for them.

So for those reasons, I'm going to hold that there was proper notice of the claim in July of 1997, as required under the policy, and that, therefore, this is a covered claim under the policy.

These findings are incorporated by reference into the trial court's Order of March 1, 2004, which reads, in relevant part, as follows:

The Court declares that National Union Fire Insurance Company of Pittsburgh is obligated pursuant to [the Policy] to provide coverage to and a defense to Marlin & Edmondson, P.C....in the case of <u>Margaret Akins vs. L. Joe Edmondson, et al.</u>....

The Court further finds that the actions of National Union Fire Insurance Company of Pittsburgh in this case do not constitute bad faith and denies the Plaintiff's claims for bad faith against National Union.

The Court further finds that the Defendants, Maurice Pinson and Cooper, Love & Jackson, Inc., are not liable to Marlin & Edmondson, P.C. in this matter.

\*                             \*                             \*

It is, therefore, ORDERED, ADJUDGED and DECREED that Marlin & Edmondson be awarded a declaratory judgment against National Union Fire Insurance Company of Pittsburgh, that Joe

Edmondson, Marlin & Edmondson, P.C....are entitled to coverage and a defense under [the Policy]....

It is further ORDERED, ADJUDGED and DECREED that the claims of Marlin & Edmondson, P.C. against Maurice Pinson and Cooper, Love & Jackson, Inc. are dismissed with prejudice.

On March 29, 2004, National Union filed a Motion for New Trial and to Amend. National Union filed a Supplemental Post-Trial Motion for New Trial and/or to Amend Findings of Fact and Conclusions of Law on June 11, 2004. National Union's motions were denied by Order of August 16, 2004. In its Order of August 18, 2004, the trial court reiterates its denial of National Union's motions and, pursuant to Tenn. R. Civ. P. 54.02, declares that final judgment is entered as to the findings set out in the March 1, 2004 Order, *supra*.

National Union appeals and raises three issues as stated in its brief:

1. Whether the trial court erred in holding that Marlin & Edmondson complied with the written notice requirements under the policy;

2. Whether the provision requiring "written notice" was ambiguous; and

3. Whether Marlin & Edmondson was entitled to avail itself of an argument that the notice provision was ambiguous when Marlin & Edmondson never read the policy or attempted to review the policy to ascertain the proper method or procedure for providing written notice as required by that policy.

M&E, as cross-appellant, raises one additional issue as stated in its brief:

If this Court reverses the trial court's decision that notice was proper whether the court erred in dismissing Marlin & Edmondson's breach of contract and negligence claims against Maurice Pinson and Cooper, Love & Jackson, Inc.

We first note that, because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. *See* Tenn. R. App. P. 13(d).

It is well settled in Tennessee that the interpretation of a written contract is a matter of law, and thus, no presumption of correctness in its interpretation exists. ***NSA DBA Benefit Plan, v. Connecticut Gen. Life Ins. Co.***, 968 S.W.2d 791 (Tenn.Ct.App.1997). The cardinal rule in the

construction of contracts is to ascertain the intent of the parties. ***West v. Laminite Plastics Mfg. Co.***, 674 S.W.2d 310 (Tenn.Ct.App.1984). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the Court's function to interpret the contract as written according to its plain terms. ***Petty v. Sloan***, 197 Tenn. 630, 277 S.W.2d 355 (Tenn.1955). The language used in a contract must be taken and understood in its plain, ordinary, and popular sense. ***Bob Pearsall Motors, Inc. v. Regal-Chrysler Plymouth, Inc***., 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. ***Ballard v. North American Life & Casualty Co.***, 667 S.W.2d 79 (Tenn.Ct.App.1983). If the language of a written instrument is unambiguous, the Court must interpret it as written rather than according to the unexpressed intention of one of the parties. ***Sutton v. First Nat. Bank of Crossville***, 620 S.W.2d 526 (Tenn.Ct.App.1981).

On the question of notice, the Policy at issue in this case requires that any claims be "reported" to the company or to an "authorized agent" of the company. The Policy specifies that "[a] claim shall be deemed to have been reported when ***written*** notice of such claim is received [during the Policy Period or Extended Reporting Period] ***by the Company or its authorized agent***" (emphasis added). In short, under the plain language of the Policy, there are three requirements that must be met in order for a claim to be considered "reported": (1) the notice must be in writing, (2) the notice must be received during the policy period or extended reporting period,[1] and (3) the notice must be received by National Union or its authorized agent.

In the instant case, it is undisputed that the coverage period of the Policy was August 1, 1996 to August 1, 1997. It is also undisputed that M&E never reported its claim to National Union. Rather, M&E relied upon its agent, CL&J and in particular Mr. Pinson. To that end, M&E provided a copy of the tolling agreement in the underlying professional malpractice case to CL&J. The fact that Mr. Pinson discussed the tolling agreement, either before or after it was signed, with a National Union employee does not satisfy the plain language of the Policy because notice thereunder must be in writing and, consequently, oral notification would not suffice. However, if CL&J (even if CL&J is not an agent of National Union) sent that tolling agreement (which was in writing) to National Union, then, under the plain language of the Policy, National Union (the "Company") would have received written notice of a claim. Concerning whether the tolling agreement was sent to National Union, Mr. Pinson testified, in pertinent part, as follows:

> Q. What did you do with the tolling agreement when you received it, Mr. Pinson?
>
> A. It was given to Regina Harris at Cooper, Love & Jackson.

---

[1] The record supports a finding that the tolling agreement was discussed with National Union (and likely approved by them). Even if we assume, *arguendo*, that the tolling agreement functioned to extend the policy period, the tolling agreement specifically states that it expires on December 31, 1997. As discussed, *infra*, the record indicates that no written notice of the claim was given to National Union until January 1998.

Q. She's the lady that handled the claims during that period of time?

A. That's correct.

Q. Did you personally fax it [the tolling agreement] or provide it to National Union?

A. No, sir.

Q. And I think you assumed that Ms. Harris had faxed it to National Union, correct?

A. I assumed that, yes.

Concerning whether she sent the tolling agreement to National Union, Ms. Harris testified, in relevant part, as follows:

Q. Now, I believe you [Ms. Harris] had communication with Mr. Pinson about the tolling agreement on July 3rd of 1997, correct?

A. Correct.

Q. Now, there's been testimony in the case that the tolling agreement was never faxed by Cooper, Love & Jackson to anybody. Is that true?

A. I have no idea.

*                              *                              *

Q. Now, there's no record that the tolling agreement was ever faxed to National Union. But it's true, isn't it, that you all [CL&J] had the tolling agreement and did, in fact, fax it to CNA?

A. Correct.

Q. At their request?

A. Correct.

Q. Do you remember National Union ever making a request that you fax to it the tolling agreement?

A. I think I might remember them doing that?

-10-

Q. And did you ever fax it to them?

A. *I think I may have in '98.*

(Emphasis added). From the relevant testimony, there is no indication that CL&J faxed, or otherwise sent, the tolling agreement to National Union during the Policy period. Consequently, the Company (i.e. National Union) did not receive notice of M&E's claim within the policy period.

The next question that must be addressed is whether M&E's giving the written tolling agreement to CL&J constitutes notice to an "authorized agent" of National Union. The trial court specifically found that, because the Policy does not define the term "agent," "authorized agent," or "duly authorized agent" the term is ambiguous. We disagree. The terms "agent," "authorized agent," and "duly authorized agent" have been used in legalese from time immemorial. As noted above, the language used in a contract must be taken and understood in its plain, ordinary, and popular sense. ***Bob Pearsall Motors, Inc. v. Regal-Chrysler Plymouth, Inc***., 521 S.W.2d 578 (Tenn.1975). In construing contracts, the words expressing the parties' intentions should be given the usual, natural, and ordinary meaning. ***Ballard v. North American Life & Casualty Co.***, 667 S.W.2d 79 (Tenn.Ct.App.1983). Black's Law Dictionary 59 (5th ed. 1979) defines "agent," in relevant part, as follows:

> A person authorized by another to act for him, one intrusted with another's business.... One who represents and acts for another under the contract or relation of agency.... A business representative, whose function is to bring about, modify, affect, accept performance of, or terminate contractual obligations between principal and third persons.... One who undertakes to transact some business, or to manage some affair, for another, by the authority and on account of the latter, and to render an account of it....

(Internal citations omitted).

Because the term "agent" itself denotes the giving of actual or official power, the addition of the adjectives "authorized" and "duly (i.e. properly) authorized" to the word "agent" is usually redundant. ***See*** Bryan A. Garner, A Dictionary of Modern Legal Usage 299 (2nd ed.1995).

Turning to the record in this case, it is undisputed that CL&J had no direct authority to write insurance policies for National Union. Rather, CL&J went through another broker, Mid-South Benefits, in order to procure the Policy for M&E. David Sciortino, Vice President and area manager for CL&J, testified, in pertinent part, as follows:

> Q. While representing the insurance markets...there are certain insurance companies with whom Cooper, Love & Jackson has an agency relationship, correct?

-11-

A. Correct.

\*                          \*                          \*

Q. Tell me who they are.

A. Cincinnati, Travelers, St. Paul. We've got several.

Q. But you did not have an agency relationship with National Union, correct?

A. We [CL&J] did not have a contract.

Q. And you had no agency relationship to bind National Union, did you?

A. No, we didn't.

From our review of the entire record in this case, and applying the usual and ordinary meaning of the word "agent" to the facts of this case, we can only conclude that CL&J was not an agent of National Union. Consequently, the fact that M&E provided the written tolling agreement to CL&J does not satisfy the Policy requirement that written notice be received by an "authorized agent". In addition, as discussed above, no written notice was given to National Union directly. Therefore, the notice requirement contained in the Policy (a condition precedent to coverage) was not satisfied in this case, and National Union is not bound to indemnify or defend M&E in the underlying suit. If any negligence exists in this matter, it must necessarily be on the part of CL&J. M&E's complaint alleges and the proof is undisputed that Pinson and CL&J were agents for M&E in the procurement of the policy, servicing of the policy, and for the purpose of giving notice of claims. M&E relied upon its agents to the extent that M&E did not even familiarize itself with the terms of the policy at issue.

Accordingly, and for the foregoing reasons, we reverse the Order of the trial court. We remand for entry of a judgment in favor of National Union, and for such further proceedings as may be necessary concerning the action filed by M&E against CL&J and Pinson. Costs of this appeal are assessed one-half to Appellee/Cross-Appellant Marlin & Edmondson, P.C., and one-half to Appellees, Cooper, Love & Jackson and Maurice Pinson.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.

-12-